THOMAS K. BARBER *v.* ROBERT D. JACOBS ET AL.

ROBERT D. JACOBS ET AL. *v.* THE PUTNAM TRUST
COMPANY OF GREENWICH ET AL.

(AC 18829)

Schaller, Spear and Daly, Js.

Argued December 8, 1999—officially released June 20, 2000

*Scott M. Harrington,* with whom, on the brief, was *Richard E. Castiglioni,* for the appellants (defendants in the first case, plaintiffs in the second case).

*John F. Lambert,* for the appellee (plaintiff in the first case, defendant Thomas K. Barber in the second case).

*Opinion*

DALY, J. The defendants[1] appeal from the judgment of the trial court rendered after a trial to the court in two consolidated cases ordering them to return to the plaintiff, Thomas K. Barber, a down payment for the purchase of a residence owned by the defendants Robert D. Jacobs and Linda S. Jacobs.[2] The court determined that the agreement between the plaintiff and the Jacobses to purchase the Jacobses' residence never came into existence because it was subject to a condition that had not been fulfilled. The defendants claim that the court improperly (1) found that the plaintiff

---

[1] We refer in this opinion to Robert D. Jacobs, Linda S. Jacobs and Irwin K. Liu as the defendants.

[2] In the first case, the plaintiff buyer, Barber, sought to recover moneys deposited by him with the defendant Irwin K. Liu, attorney for the defendant sellers, the Jacobses. In the second case, the Jacobses sought to recover damages from The Putnam Trust Company of Greenwich (bank) and Barber, in excess of the deposit, resulting from a breach of contract and related claims arising from the failure of Barber to purchase their home. Prior to trial, the Jacobses withdrew their action against the bank and, therefore, the bank is not a party to this appeal.

made reasonable efforts to secure a mortgage as required by the agreement, (2) found that the plaintiff did not breach the implied contractual covenant of good faith and fair dealing and (3) required the defendants to complete an application with the inland wetlands and watercourses agency (agency) of the town of Greenwich. We affirm the judgment of the trial court.

These two consolidated actions involve an attempt by the plaintiff to terminate an agreement to purchase real property owned by the defendants Robert Jacobs and Linda Jacobs. In the plaintiff's action for interpleader, he sought to determine the rights to a certain deposit of $327,000 that was paid toward the purchase of the property and was being held in escrow. In the Jacobses' action, they sought to recover damages from the plaintiff, in excess of the deposit, resulting from the plaintiff's breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and fraudulent misrepresentations.

The court found the following facts. The plaintiff and his family planned to move from Toronto, Canada, to Connecticut and desired to move into a home in the New York area before the upcoming school year. The plaintiff and his wife first viewed the property owned by the Jacobses on April 19, 1994. The plaintiff made an offer to the Jacobses on May 25, 1994, and requested a "wetlands inspection, including soil tests to be sure there is room for a tennis court."

On June 17, 1994, the plaintiff signed a contract with a purchase price of $3,275,000 and a closing date of August 8, 1994. The contract contained a mortgage contingency clause, which provided that the "[a]greement [was] contingent upon Purchaser obtaining a commitment for a loan, to be secured by a first mortgage on

the premises, in an amount not in excess of $1,300,000 . . . ." The mortgage contingency required the plaintiff to "make prompt application for such a loan" and "to pursue said application with diligence." The Jacobses signed the contract on June 24, 1994. The plaintiff paid a 10 percent deposit amounting to $327,000, which was held by the Jacobses' attorney, the defendant Irwin K. Liu, pursuant to the contract.

A mortgage application was forwarded to The Putnam Trust Company of Greenwich (bank) on June 20, 1994, disclosing the plaintiff's monthly income of $210,000 and net worth in excess of $4,000,000. On June 30, the bank loan committee approved the loan but did not establish an interest rate, nor did it issue a formal mortgage commitment.

The plaintiff was represented by Thomas Hartch who also represented the bank.[3] Hartch ordered a plot plan of the property and reviewed the inland wetlands file. On June 30, 1994, Hartch received the same plot plan prepared by Bruce Lasky, a soil scientist, outlining in red pencil the location of the inland wetlands area, the location of the existing septic system and proposed system to serve the pool house, set-back lines and the location of a possible tennis court. On July 14, 1994, Hartch received a new map depicting the inland wetlands area, also prepared by Lasky, and compared these maps with a map on file with the agency that had been completed in 1986. Hartch concluded that discrepancies existed between the 1986 agency map and the 1994 plot plan maps prepared by Lasky. In addition, the agency file showed that on April 2, 1986, an inland wetlands compliance officer found clearing and ground disturbances in the wetlands area on the property that violated agency regulations. The agency sent a letter to

---

[3] The court stated that "it is common practice in this area for the same attorney to represent [the] buyer and the lender . . . ."

the Jacobses stating that there were "unauthorized activities on [their] property" that violated agency regulations. A July 30, 1986 final report stated that the problems on the land regarding wetlands were not fixed and still needed resolution.

On July 18, 1994, Hartch advised the plaintiff that he was obligated to bring the matter to the attention of his other client, the bank, and did so on July 19, 1994, by bringing the records to the attention of bank executive Ronald Lowe. The bank reversed the loan approval and issued a written denial because the property failed to comply with agency standards. Hartch notified Liu of the situation and requested the return of the deposit because the contract was void under the mortgage contingency clause. The defendants refused.

Meanwhile, the plaintiff and his wife considered other homes. The plaintiff first looked at the home of Frank Gifford and Kathy Lee Gifford on July 17, 1994. The Gifford home was viewed again on July 21, 1994, along with a Bronxville residence that would not be available on time to meet the plaintiff's schedule. The plaintiff tendered an offer to the Giffords of $3,000,000 on July 23, 1994, which was accepted by the Giffords on August 4, calling for a closing date of August 18, 1994.

The trial court's factual findings are "binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Food Studio, Inc.* v. *Fabiola's*, 56 Conn. App. 858, 862, 747 A.2d 7 (2000); see also *Powers* v. *Olson*, 252 Conn.

98, 105, 742 A.2d 799 (2000). When the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

I

The primary issue in this appeal is whether the plaintiff made a reasonable effort to obtain a mortgage which was a condition precedent of the contract. Mortgage contingency clauses in contracts imply a promise by the borrower that he or she will "make reasonable efforts to secure a suitable mortgage." *Lach* v. *Cahill,* 138 Conn. 418, 422, 85 A.2d 481 (1951). We agree with the court's conclusion that, given all of the surrounding circumstances, the plaintiff made a reasonable effort to obtain a mortgage.

The defendants make much of the fact that the plaintiff did not seek out a loan commitment from another institution when the bank rejected him and conclude that from this inaction that the plaintiff did not make reasonable efforts to obtain a mortgage. We are not persuaded.

The facts of this case are analogous to those in *Luttinger* v. *Rosen,* 164 Conn. 45, 316 A.2d 757 (1972). In *Luttinger,* the plaintiffs sought to purchase a home. The contract was subject to the plaintiffs obtaining mortgage financing of no greater than 8.5 percent. Id., 46. The plaintiffs applied for a loan at, what the plaintiffs' experienced attorney knew to be, the only institution that would lend the amount of money needed for the type of dwelling in issue. Id. The mortgage commitment was obtained at a rate of 8.75 percent, which was too high under the contract. Id. The plaintiffs sought to get back their down payment from the defendants, and the defendants refused. Id., 47. On appeal, our

Supreme Court concluded that the knowledge of plaintiffs' attorney of lending rates in and out of the area adequately supported the conclusion that due diligence was used in seeking mortgage financing, even though the plaintiffs went to one bank only. Id. Our Supreme Court rejected the defendants' argument that applications should have been made at other institutions, stating that "[t]he law does not require the performance of a futile act." Id.

Just as the attorney in *Luttinger* knew that other loans were not available, here, Hartch knew that the wetlands problem was an obstacle to obtaining a loan. Like the attorney in *Luttinger*, Hartch drew on his experience to conclude that the wetlands problem could not be easily overcome. The problem with the Jacobses' property, that is, noncompliance with agency regulations, was not a minor one. The record indicates that the plaintiff made an application in a timely manner to the bank and received a favorable response, which was later rescinded when the plaintiff's counsel informed the bank of potential inland wetlands irregularities involving the premises.

Furthermore, this problem needed to be resolved quickly, and Hartch knew that a quick resolution was not likely to happen. Time was of the essence for the plaintiff, as he and his wife needed a new home as soon as possible so that their children could start school in the area. Indeed, Hartch's advice proved sound, as the agency file on the matter was not closed until December 20, 1994, and even then, approval was given subject to six special conditions.

The record clearly shows that the property's noncompliance with inland wetlands regulations was a major obstacle to the plaintiff's obtaining a loan from the bank. It is reasonable to assume that other lending institutions would be reluctant to grant a mortgage

under the then prevailing circumstances, and, as stated previously, the law does not require parties to perform futile acts. Accordingly, it was not improper for the court to conclude that the plaintiff used reasonable efforts to secure a suitable mortgage and did not breach the contract.

The defendants also contend that the plaintiff received a mortgage commitment from the Jacobses themselves, which the plaintiff was bound to accept. Even if we assume, arguendo, that the Jacobses gave such a commitment, the plaintiff was not required to accept it. Again, *Luttinger* v. *Rosen,* supra, 164 Conn. 45, guides our resolution of this claim. In *Luttinger,* the defendants, through counsel, offered to make up the difference between the interest rate offered by the bank and the 8.5 percent rate provided for in the contract by a "funding arrangement," which the plaintiffs did not accept. Id., 46–47. Our Supreme Court stated that "[a]ny additional offer by the defendants to fund the difference in interest payments could be rejected by the plaintiffs." Id., 48, citing *Lach* v. *Cahill,* supra, 138 Conn. 420. Similarly, we conclude that the court's conclusion that the plaintiff was not bound to accept the Jacobses' offer of a mortgage under the contract was correct.

As the court properly summarizes: "For all the reasons set forth before, the court finds that [the plaintiff's] efforts were reasonable. The problem was created by the sellers. It was unresolved. An experienced practitioner representing the [plaintiff and his wife] felt that this was not a problem that would be resolved quickly. This court does not require [the plaintiff] to adjourn the closing to allow an opportunity for the problem to be corrected, particularly in light of the timetable which was found by this court to have existed prior to the contract being entered into and was further evidenced by the conduct of the [plaintiff and his wife] after the

termination of the contact. They needed a house immediately."

We conclude that the court's finding that the plaintiff made sufficient reasonable efforts to secure a mortgage, in light of all of the surrounding circumstances, was not clearly erroneous.

## II

The defendants next claim that the court improperly concluded that the plaintiff did not breach the implied contractual covenant of good faith and fair dealing. We disagree.

"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. . . . Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. . . . Conversely, [b]ad faith means more than mere negligence; it involves a dishonest purpose." (Citations omitted; internal quotation marks omitted.) *Middletown Commercial Associates Ltd. Partnership* v. *Middletown*, 53 Conn. App. 432, 437, 730 A.2d 1201, cert. denied, 250 Conn. 919, 738 A.2d 657 (1999).

Ample evidence supports the court's conclusion that the plaintiff did not violate the implied covenant of good faith and fair dealing. The plaintiff and his wife expressed genuine interest in the Jacobses' house. Indeed, the court called the testimony of the plaintiff's wife, "compelling." She stated that their need for a quick move because of their children drove their decision. She wanted her children to meet other children in the neighborhood, get medical shots and physicals and start school on time. The Jacobses' problem with their resi-

dence could not be resolved quickly, and for the plaintiff, time was of the essence. The plaintiff's efforts to find another home were not driven by a dishonest purpose of escaping the agreement. Sufficient evidence exists for the court to conclude that the plaintiff did not breach the implied covenant of good faith and fair dealing, and we will not disturb that decision.

## III

The defendants finally claim that the court improperly required them to complete an inland wetlands application within a short period of time while the plaintiff was excused from the contract. Specifically, the defendants interpret the court's statement that "[h]ad the [Jacobses] cleared up the problem by the closing date of August 8, 1994, and tendered a deed on that date, this court would be looking at a very different case," as somehow imposing on them the obligation to complete such an application. We disagree.

The court's statement, which is dicta, merely predicts what might have happened had the wetlands problem been resolved by the closing date, and does not place an obligation on anyone. See *Sharkiewicz* v. *Smith*, 142 Conn. 410, 412, 114 A.2d 691 (1955). At most, the court merely commented that if the wetlands problem were resolved by August 8, 1994, the plaintiff would not have been faced with an undue delay in purchasing the Jacobses' home. Simply put, nothing in the court's decision imposes such an obligation on the defendants as they claim.

The judgment is affirmed.

In this opinion the other judges concurred.