[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action, the plaintiff, Seraya, Inc., sues the defendant, John Wirth, for money damages, specific performance, attorney's fees, and for the release of a lien because of a breach of contract to purchase a newly constructed, custom built home, located on Hog Hill Road in East Hampton and for refusal to release a purchaser's lien on said property under General Statutes § 49-92a. The defendant denies breaching the contract and improperly refusing to release the lien; interposes special defenses of a liquidated damages clause under the contract, rescission of the contract, excusal of performance because of the plaintiffs breach, the failure to mitigate damages, extinguishment of the lien by a foreclosure judgment, and permission to maintain the lien under the contract; and asserts counterclaims based on breach of contract and a violation of the Connecticut Unfair Trade Practices Act (CUTPA). The defendant seeks money damages, punitive damages, attorney's fees, and a rescission of the contract. The plaintiff denies the salient allegations of the special defenses and counterclaims.
During the pendency of this action, the plaintiff filed a motion to discharge the purchaser's lien, which motion was granted by the court,Zarella, J., on November 22, 1999. Therefore, this decision will omit discussion of the second count of the complaint, which sought this same relief, except as to the issue of damages and attorney's fees pertaining to that discharge. Also, since the filing of this action, the plaintiff has sold the property in question to a third party so that the remedy of specific performance is moot.
On March 21 through 23, 2001, the court heard this trial and finds the following facts.
Sometime in March 1997, the defendant, who had seen another house built by the plaintiff and was impressed by it, approached Eugene Sammartino, the president and sole shareholder of the plaintiff, about constructing a similar home for the defendant. At that time, the plaintiff either possessed or soon thereafter acquired an option to purchase a lot on Hog Hill Road. On August 23, 1997, the parties signed an agreement whereby the defendant would purchase a custom built house and lot from the plaintiff for $134,079. Other terms of the contract will be discussed where appropriate. On that date, the defendant deposited $2681 with the plaintiff to secure the sale. CT Page 6620
The contract contained a mortgage contingency clause which required the defendant to apply within seven days for a mortgage loan of $80,000 payable over thirty years with an interest rate of eight percent or less and diligently pursue such application. Upon written notice before October 1, 1997, of the defendant's inability to obtain such a loan, the contract would be void, and the defendant would be entitled to a refund of all deposits paid by him. If the defendant secured the mortgage commitment, an additional deposit of $6699 would be due.
The contract lacked any construction completion or closing date, except that the closing was to occur no later than five days after the issuance of a certificate of occupancy, subject to certain final inspections. Under the agreement, the plaintiff was the general contractor and was required to ensure that the residence was constructed in a workmanlike manner and in compliance with state and local building regulations.
On September 24, 1997, the defendant obtained a mortgage commitment, satisfying that contingency clause of the agreement from First Investors Mortgage Company. The defendant promptly relayed this information to the plaintiff and paid the additional deposit of $6699. After building permits were issued, construction of the house began in November or December 1997.
On February 14, 1998, the parties agreed to modify the original contract in several respects. The modification called for a closing date no later than April 15, 1998. It also required that at least eight inches of stone be laid under the cement basement floor. It changed the mortgage commitment contingency date to March 31, 1998, and included language permitting the defendant to "re-verify his prior mortgage commitment, now expired, of September 24, 1997. If the purchaser is unsuccessful in his attempt to re-verify said mortgage commitment, he shall make diligent application for a new mortgage commitment."
The contract alteration also added a new provision that, if the defendant challenged the dwelling's compliance with the Connecticut Basic Building Code (CBBC) or contract specifications, he was to notify the plaintiff in writing of any claimed noncompliance. If the defendant's objection remained unresolved within thirty days of this notification, the defendant could rescind the agreement and receive a full refund of his deposits.
The initial mortgage commitment expired on January 8, 1998. The defendant reapplied, but, on March 27, 1998, his reapplication was rejected by First Investors Mortgage Co. because his weekly income underwent a seasonal decline in January 1998. The defendant repeatedly CT Page 6621 notified the plaintiff, in writing, of this rejection. The defendant never sought a mortgage commitment from any other lender because he assumed the outcome would be the same. Consequently, the defendant was financially unable to purchase the property as of April 15, 1998, the closing date set under the contract modification.
On March 12, 1998, the defendant had sent Sammartino a letter enumerating the defendant's complaints regarding construction of the house up to that point. On March 26, 1998, the defendant, his attorney, Sammartino, and an employee of the plaintiff assembled to discuss these criticisms. Although the testimony on this issue was in dispute, the court finds that the result of the meeting was that the defendant's objections were satisfactorily addressed by the plaintiff and that the defendant intended to complete his purchase of the property as scheduled on the erroneous assumption that his mortgage commitment would be renewed by First Investors Mortgage Co.
On March 29, 1998, the defendant sent another letter to Sammartino, by certified mail, notifying the plaintiff that he wished to withdraw from the purchase and sale agreement based on his inability to secure financing. This was the first time that the defendant expressed a desire to rescind the contract and have his deposits refunded. The plaintiff received this rescission letter on March 30, 1998.
Previously, the defendant had supplied two exterior doors and a deck slider, purchased at his own expense, to the plaintiff for installation in the house. The defendant also sought $1,612.26 as restitution for those expenditures.
Once the plaintiff received the rescission letter, work ceased at the site. The plaintiff remarketed the property, painted the interior walls, installed a lawn, and incurred the following additional costs and expenses which the plaintiff would not have sustained had the defendant closed the purchase of the property on April 15, 1998, as called for under the contract:
 Property taxes and interest $ 300.00 Insurance 60.00 Electricity 180.96 Painting 1,837.77 Lawn installation 800.00 Seed 103.00 Hay 180.00 Mowing 235.00 Realtor's commission 8,610.00 Construction loan interest 20,334.00 CT Page 6622 ----------- Total $ 32,460.73
However, the plaintiff, in fact, sold the property in December 1999 for $143,500, which sum is $9,421 more than the sales price for the defendant. Also, the plaintiff was able to exercise the option to purchase the lot for $10,000 less because of the delay caused by the defendant's withdrawal from the contract. Except for the $32,460.73 in additional expenses noted above, the cost to build the house was otherwise the same. The plaintiff gained $9,421 in purchase price plus saved $10,000 to acquire the lot for a total gain of $19,421 by not
selling the house to the defendant. Thus, the loss to the plaintiff by the defendant's failure to complete the sale by April 15, 1998, equals the $32,460.73 minus $19,421 for a difference of $13,039.73. Against this amount must be set off the value of the exterior doors and slider provided by the defendant, $1,612.26, leaving a net loss of $11,427.47. If the defendant breached the contract by failing to close by April 15, 1998, the plaintiff would have sustained $11,427.47 in actual damages.
 I
The first count of the complaint alleges that the defendant breached the contract by failing to purchase the property by April 15, 1998. The court finds that the plaintiff failed to meet its burden of proving, by a preponderance of the evidence, that the defendant breached the agreement. Paragraph 53 of that agreement, as modified, obligated the defendant to attempt to obtain a mortgage commitment for $80,000 by March 31, 1998. The defendant received the unanticipated rejection of his application to renew the mortgage commitment which had previously been made by First Investors Mortgage Co.
The court concludes that it was unrealistic and improbable to expect that the defendant could have applied elsewhere and secured a mortgage commitment by March 31, 1998. The defendant's failure to attempt to do so appears inconsequential. His financial situation was such that it is highly speculative that he could have satisfied this mortgage commitment contingency in any event.
A mortgage contingency clause in a contract implies a promise that the prospective purchaser will make reasonable effort to obtain the financing, Barber v. Jacobs, 58 Conn. App. 330, 335 (2000). These provisions do not require the parties to engage in futile acts, Barber v.Jacobs, supra; Luttinger v. Rosen, 164 Conn. 45, 47 (1972).
The court holds that under the contract, the defendant was permitted to terminate the agreement because of his inability to secure a timely CT Page 6623 mortgage commitment. Therefore, his refusal to close by April 15, 1998, was no breach of the contract which the defendant had properly rescinded.
 II
As noted above, the relief requested under the second count of the complaint was granted, by motion, by the court, Zarella, J., previously. The only issue remaining as to that count is whether the plaintiff is entitled to reasonable attorney's fees and other damages for having to bring this action to discharge the purchaser's lien under § 49-92a.
Section 49-92a creates a purchaser's lien for the amount of any deposits paid pursuant to an agreement to purchase land, which lien is perfected by recording the contract on the land records for the town in which the land is located. Under General Statutes § 49-92e, an interested party may seek discharge of such a lien in court if the lienor refuses a request to discharge the lien within ten days of the request. The court determines the validity of the lien, and, if the lien is adjudged invalid, the court may award damages for the failure to discharge the lien.
In this case, the court, Zarella, J., ruled that the purchaser's lien created by the defendant's recording of the purchase and sale agreement on the East Hampton land records was invalid. The court regards that ruling as the law of the case on that issue.
At trial, the plaintiff offered no evidence regarding any actual damages caused by virtue of the delay in discharging the lien. The court heard nothing with respect to the remarketing of any or postponement of the closing which eventually transpired because of the existence of this lien. The plaintiff did offer evidence that he incurred $35 to record the court's adjudication invalidating the lien and attorney's fees of $2100 expended in the effort to obtain that adjudication.
As to attorney's fees, Connecticut follows the "American rule." That rule precludes a successful litigant from recovering attorney's fees unless there is a contractual or statutory provision authorizing such an award or where the opposing party has acted in bad faith, vexatiously, wantonly, or oppressively, Mans v. McGrath, 58 Conn. App. 183, 188
(2000), cert. granted, 254 Conn. 919 (2000). Our legislature has chosen to follow the American rule and has made specific provisions allowing an award of attorney's fees, Doe v. State, 216 Conn. 85, 107 (1990).
The contract in the present case lacks any provision authorizing an award of attorney's fees. Section 49-92e simply declares that the court CT Page 6624 "may award the plaintiff damages for the failure of the defendant to make discharge upon request." In the absence of "a clear expression of the legislature's intent" to permit an award of attorney's fees, the court cannot create an exception to the American rule by implication. Flemingv. Garnett, 231 Conn. 77, 93 (1994).
When the legislature wishes to create such an exception, it knows how to do it, Id. Indeed, a related statute, General Statutes § 49-51, which permits courts to discharge invalid liens in general, states that, if the lien was filed without just cause, reasonable attorney's fees may be included as part of the loss suffered by the lienor's refusal to discharge within thirty days after the request. Similar language is absent from § 49-92e which governs the circumstances in the present case.
The second count, which seeks adjudication of the invalidity of the defendant's purchaser's lien, lacks any allegation that the defendant engaged in wanton, willful, or oppressive behavior or acted in bad faith. Therefore the court cannot award attorney's fees on that basis.
Even if such allegations were presented, the court finds that they are unproven. The contract expressly provided, in paragraph 53, that upon acquisition of the property by the plaintiff, the contract may be recorded on the land records. The defendant has disputed the plaintiffs right to retain the deposits in good faith. Mere indifference to the plaintiff's warnings fails to constitute wanton, willful, or malicious conduct, Ralph v. Vegeler, 45 Conn. App. 56, 65 (1997).
The plaintiff is entitled to costs plus the $35 recording fee on the second count, but an award for attorney's fees in unavailable under § 49-92e.
 III
Turning to the defendant's amended counterclaim, the first count alleges that numerous instances of poor workmanship and building code violations occurred during the construction of the house which constitute a breach of the purchase and sale agreement. For the reasons recited below, a determination of whether such deficiencies existed is unnecessary as to this count.
A party cannot recover on a contract unless that party has fully performed its obligations under that contract, DiBella v. Widlitz,207 Conn. 194, 199 (1998); Ravitek v. Stollman Poultry Farms, Inc.,165 Conn. 135, 149 (1973); Automobile Ins. Co. v. Model Family Laundries,Inc., 133 Conn. 433, 437 (1947). Deviations from the contract terms CT Page 6625 which are slight, trivial, or inconsequential, however, and which cause no loss to the other party are de minimus, and such performance permits full recovery, Pratt v. Dunlap, 85 Conn. 180, 184 (1972).
In the present case, the defendant, by his own testimony, was financially unable to purchase the property by the closing date of April 15, 1998. He rescinded the contract upon learning of his failure to obtain a mortgage commitment by March 31, 1998. Because the defendant was incapable of purchasing the property under the contract and, instead, terminated it, the quality of workmanship is immaterial.
The defendant's rescission of the contract was legitimate. The defendant is entitled to a refund of the deposits he paid which total $9,380 ($2,681 plus $6,699) and for the costs of the exterior doors and slider which he purchased for $1,612.26.
 IV
The second count of the amended counterclaims simply incorporates by reference the first eight paragraphs of the first count and adds nothing to them. The court's ruling as to the first count cover the second count.
 V
The third count of the amended counterclaim alleges a CUTPA violation. As a basis for this claim, the defendant avers that the plaintiff misrepresented itself as a builder of superior quality house. The defendant had seen another house constructed by the plaintiff, and it was agreed that the plaintiff would construct for the defendant a house similar in exterior design to the one which had caught his eye.
Although the contract obligated the plaintiff to build the house in a workmanlike fashion, the plaintiff never represented itself to the defendant as a builder of a "superior quality" houses. The defendant inferred this characteristic from his own observation.
The defendant also contends that the plaintiff was tardy in erecting the house on Hog Hill Road. The court rejects this contention as unproven. The original contract contained no completion or closing date. The defendant testified that Sammartino orally projected that the house would be finished by Christmas of 1997. Sammartino denied making that prediction, and the court finds Sammartino's testimony credible on this point. The court further finds that the house would have been completed by the April 15, 1998, closing date but for the defendant's rescission of the contract which caused the plaintiff to halt work. CT Page 6626
As to the quality of construction, the court heard conflicting evidence. The court finds that the plaintiffs version of events was more persuasive and demonstrated that the house was built in workmanlike manner. The local building official inspected the site during various stages of construction and found substantial compliance with all pertinent building code regulations. He issued the certificate of occupancy for the house based on those inspections and his conclusion. Although the defendant voiced a variety of complaints, the plaintiff addressed these complaints adequately. The defendant has failed to meet its burden of proving that the construction of the house was substandard. The court rules for the plaintiff on this count of the counterclaim.
In summary, the court finds for the defendant on the first count of the complaint, awards costs and $35 as to second count which was previously decided in the plaintiffs favor; and finds for the plaintiff on the third count of the counterclaim, and for the defendant as to his claim that the contract was validly rescinded and the defendant is entitled to a refund of his deposits of $9,380 and $1,612.26 for the doors and slider for a total judgment on the amended counterclaim of $10,992.26.
 ________________ SFERRAZZA, JUDGE