## G. WILLIAM MCCOY ET AL. *v.* JAMES A. BROWN ET AL.
## (AC 32082)

Bishop, Robinson and Peters, Js.

Argued May 19—officially released August 16, 2011

*John F. Carberry*, with whom, on the brief, was *Timothy M. Herring*, for the appellants (plaintiff G. William McCoy et al.).

*James C. Riley*, for the appellees (defendant James A. Brown et al.).

*Opinion*

PETERS, J. Contracts for the sale of real property often contain mortgage contingency clauses. In this case, the mortgage contingency clause required the purchasers to apply for a mortgage commitment "at the

prevailing rate . . . and [to] pursue the same diligently."[1] The principal issue is whether the purchasers, having learned that they were ineligible for a mortgage at "the prime rate," were required to exercise due diligence to pursue alternate mortgage options. The trial court resolved this issue in favor of the vendors. The purchasers have appealed. We affirm the judgment of the court.

On July 10, 2007, the plaintiffs, G. William McCoy and Karen S. McCoy, filed a three count complaint against the defendants, James A. Brown and Nancy F. Brown, in which they alleged that the defendants' refusal to return a $127,500 deposit toward the purchase of the defendants' home in Darien constituted a breach of contract, statutory theft and conversion.[2] The defendants filed an answer, special defenses and a counterclaim, in which they alleged breach of contract, breach of the covenant of good faith and fair dealing, and fraud. Following a court trial, the court rendered judgment in favor of the defendants on all counts of the plaintiffs' complaint and on the defendants' counterclaim for breach of contract. Accordingly, the court awarded the defendants $126,860.94[3] and attorney's fees. The plaintiffs have appealed.

The following undisputed facts were found by the court. In January, 2007, G. William McCoy[4] decided to

---

[1] A mortgage contingency clause in a contract implies a promise that the prospective purchaser will exert reasonable efforts to obtain a mortgage commitment. *Phillipe* v. *Thomas*, 3 Conn. App. 471, 473, 489 A.2d 1056 (1985).

[2] This case was consolidated with an interpleader action filed by Bove & Milici, a Connecticut law firm that represented the defendants, to determine the rights to a fund representing the plaintiffs' $127,500 deposit that the law firm was holding in escrow. The trial court granted the law firm's motion for an interlocutory judgment of interpleader, and the law firm deposited the escrow funds with the clerk of the court.

[3] The sum of $126,860.94 represents liquidated damages awarded to the defendants and was calculated by subtracting $639.06 in disbursements from the original $127,500 deposit.

[4] We refer to G. William McCoy and Karen S. McCoy collectively as the plaintiffs. We refer to G. William McCoy individually as McCoy.

relocate his family to Darien. McCoy spoke to Christopher Raia, a friend and former neighbor, about the possibility of employment in Raia's company, Provation, LLC (Provation).

On May 1, 2007, the parties entered into a contract for the sale of the defendants' property located at 15 Little Brook Road North in Darien (property) to the plaintiffs for $1,325,000.[5] The mortgage contingency clause in the contract provided: "This contract is conditioned upon Buyer's securing a commitment for a first mortgage loan on the Premises from any Bank in minimum limits of $1,020,000.00 amortized over a term of not less than thirty years with interest at the prevailing rate and containing no conditions beyond Buyer's reasonable ability to satisfy. Buyer agrees to make application forthwith and pursue the same diligently. . . . In the event Buyer shall fail to secure said mortgage commitment and has demonstrated due diligence, on or before May 11, 2007, he shall have the option of terminating this Contract and all deposit monies paid hereunder shall forthwith be refunded to the Buyer except the sum of $200.00 for the cost of preparing this contract of sale, and all rights and obligations of the parties hereto shall be forever terminated. . . ."

The plaintiffs promptly submitted a mortgage application to Astoria Federal Mortgage Corp. (bank). Tim Sickinger, the plaintiffs' mortgage broker, advised them that, unless McCoy had salaried employment, the plaintiffs might have to accept a less favorable, or higher, rate on their mortgage. McCoy insisted that he wanted only the " 'best rate.' "

In the hope of achieving the more favorable, lower interest rate, McCoy asked Raia to hire him as a full-time, salaried employee of Provation. In late April, 2007,

---

[5] The purchase price subsequently was reduced, at the plaintiffs' request, to $1,275,000.

after Raia agreed to this request, McCoy amended the mortgage application to reflect Raia's offer of salaried employment.

On May 4, 2007, the bank issued a commitment letter to the plaintiffs for a thirty year mortgage at 6.25 percent interest.[6] McCoy found these terms satisfactory. The commitment letter stated that, prior to closing on the loan, the bank would require verbal verification that McCoy had started employment at Provation. However, on May 4 or 5, 2007, Raia informed McCoy that he was no longer willing to employ him on a salaried basis, although he remained interested in working with McCoy, at the same level of compensation, as a consultant or independent contractor. In a letter to McCoy, dated May 14, 2007, Raia withdrew the offer of salaried employment effective May 10, 2007.

On May 11, 2007, without undertaking any further efforts to obtain mortgage financing, the plaintiffs notified the defendants of the plaintiffs' "inability to obtain a mortgage commitment containing '. . . no conditions beyond [the] Buyer's reasonable ability to satisfy' " and demanded return of their $127,500 deposit. When the defendants refused to return the deposit, the plaintiffs commenced the present action.

The court found that the plaintiffs' efforts to obtain a mortgage "lacked due diligence and were unreasonable." It observed that the bank never rejected the plaintiffs' mortgage application, which was withdrawn "after McCoy failed to pursue it further." It found that the plaintiffs had failed to prove that they could not obtain a mortgage containing conditions appropriate to their circumstances. Accordingly, the court concluded that the defendants' refusal to return the deposit was not a

[6] At trial, neither of the parties took issue with the fact that the mortgage commitment was issued for $956,250 rather than the $1,020,000 specified in the mortgage contingency clause.

violation of the mortgage contingency clause in the contract and that they were entitled to retain the deposit as liquidated damages.

On appeal to this court, the plaintiffs claim that the court (1) misconstrued the mortgage contingency clause in the contract and (2) improperly concluded that the plaintiffs had failed to perform their contract obligations to the defendants. We are not persuaded and, accordingly, affirm the judgment of the court.

The plaintiffs' first contention is that the court misconstrued the mortgage contingency clause as requiring them to pursue a mortgage "at the prevailing rate" for borrowers in the plaintiffs' circumstances, rather than for borrowers who seek financing based on full income verification. Under the circumstances of this case, we need not resolve this issue. Neither interpretation supports the plaintiffs' bald assertion that "prevailing rate" means "prime rate."[7] More importantly, neither interpretation supports the plaintiffs' contention that their withdrawal of their one and only mortgage application satisfied their contractual obligation to exercise due diligence to obtain mortgage financing.

The plaintiffs' second contention is that the court improperly concluded that they had breached the contract. Preliminarily, we note that "[w]hether there was a breach of contract is ordinarily a question of fact. . . . We review the court's findings of fact under the clearly erroneous standard. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole." (Internal quotation marks omitted.) *Neubig* v. *Luanci Construction, LLC*, 124 Conn. App. 425, 433, 4 A.3d 1273 (2010).

---

[7] As the court observed, "[t]he plaintiff argues in his brief that 'prevailing rate' means 'prime rates offered by lending institutions,' without offering any authority for that proposition."

Any mortgage contingency clause implies "a promise that the purchaser will exert reasonable efforts to obtain a mortgage commitment." *Phillipe* v. *Thomas*, 3 Conn. App. 471, 473, 489 A.2d 1056 (1985); see also *Barber* v. *Jacobs*, 58 Conn. App. 330, 335, 753 A.2d 430, cert. denied, 254 Conn. 920, 759 A.2d 1023 (2000). In this case, the mortgage contingency clause expressly required the plaintiffs to exercise due diligence.[8] As in *Phillipe*, the language of the contract obligated the plaintiffs to use reasonable diligence in their efforts to obtain a mortgage commitment. "Reasonableness . . . is an objective standard, involving an analysis of what a person with ordinary prudence would do given the circumstances, without accounting for any particular knowledge or skill. . . . Whether the plaintiff's actions constituted reasonable efforts to satisfy the contractual condition is a factual determination for the trial court." (Citations omitted.) *Phillipe* v. *Thomas*, supra, 475.

In this case, the court found that the plaintiffs had "not exercis[ed] due diligence and reasonable care in [their] decisions regarding the acceptance of a mortgage as required by the broad mortgage contingency clause contained in the contract." Clearly, McCoy wanted a mortgage with the " 'best rate' " of interest. He knew that he would not qualify for such a rate without salaried employment. The plaintiffs made their offer to purchase the property while McCoy was unemployed. McCoy sought the salaried job offer with Provation in the hope of securing the lower interest rate he desired. As far as the record shows, when the offer of salaried employment was withdrawn, McCoy abandoned all efforts to obtain a mortgage. Indeed, the bank never rejected the

---

[8] The mortgage contingency clause in the contract of sale required the plaintiffs to make application "forthwith" for a mortgage on the terms stated in the contract and to "pursue the same diligently." The contract states that the plaintiffs would be entitled to the return of their deposit if they failed to secure a mortgage commitment at the stated terms *and* if they had "demonstrated due diligence" in their attempts to do so.

plaintiffs' mortgage application, which was withdrawn after McCoy neglected to pursue it further.

To counter the adverse inferences that the court drew from this factual record, the plaintiffs rely on *Aubin* v. *Miller*, 64 Conn. App. 781, 781 A.2d 396 (2001), and *Luttinger* v. *Rosen*, 164 Conn. 45, 316 A.2d 757 (1972). We agree with the court that these cases are distinguishable. In *Aubin*, contrary to the facts of this case, the plaintiff's mortgage application was denied. *Aubin* v. *Miller*, supra, 787. In *Luttinger*, the buyer was offered a mortgage at an interest rate that exceeded the maximum interest rate stated in the mortgage contingency clause. *Luttinger* v. *Rosen*, supra, 46. The mortgage contingency clause in the present case had no interest rate cap.[9] Indeed, as the court noted, "[i]t was [McCoy] . . . who insisted that he would only accept a preferred mortgage rate, and it was he who should have negotiated a cap on interest rates in the contract of sale." We agree with the court.

The crucial fact found by the court was that, even if Raia's withdrawal of the offer of salaried employment at Provation would have disqualified the plaintiffs' eligibility for a mortgage at a 6.25 percent interest rate, other mortgage options were open to the plaintiffs, which they could have pursued.[10] McCoy's unilateral decision to forgo *any* inquiry into *any* financing alternatives amply supports the court's determination that "McCoy failed to exercise due diligence and [that he] was unreasonable in his decision not to consider

---

[9] We take judicial notice of the fact that many contracts like that at issue in the present case state a given percentage rate in the mortgage contingency clause.

[10] We reject the analogy the plaintiffs attempt to draw between the no-income verification loan that McCoy could have qualified for, based upon his assets, 1099 income and severance pay, and a "subprime" mortgage loan, which refers to higher interest loans issued to borrowers that have low credit ratings. The two are not equivalent.

another form of mortgage which may have carried a higher rate of interest."

We conclude, therefore, that the court properly found that the plaintiffs failed to exercise due diligence to secure a mortgage at the prevailing rate after they learned that they were ineligible for financing at their preferred rate. In light of this failure on their part, we agree with the court that the plaintiffs were not entitled to a return of the deposit on their contract for the purchase of the defendants' property.

The judgment is affirmed.

In this opinion the other judges concurred.