# SAMNARD ASSOCIATES, LLC *v.* CITY OF NEW BRITAIN
## (AC 33400)

Alvord, Espinosa and Bishop, Js.

Argued November 7, 2012—officially released January 22, 2013

*Philip C. Pires*, with whom were *Barbara M. Schellenberg* and, on the brief, *Jonathan S. Bowman*, for the appellant (plaintiff).

*Joseph E. Skelly, Jr.*, assistant corporation counsel, for the appellee (defendant).

*Opinion*

ALVORD, J. In this municipal tax appeal, the plaintiff, Samnard Associates, LLC, challenges the rendering of summary judgment in favor of the defendant, the city of New Britain (city). On appeal, the plaintiff claims that the trial court improperly determined that the plaintiff was precluded from appealing its property assessment for the October 1, 2009 grand list. The court concluded that the plaintiff could not compel an interim revaluation to obtain a further reduction in the assessment it had received for the October 1, 2007 grand list. We affirm the judgment of the trial court, albeit on different grounds.

The following facts and procedural history are relevant to the plaintiff's appeal. On October 1, 2007, the city conducted a revaluation of all real estate in New Britain. The assessor determined that the plaintiff's property, located at 643 Farmington Avenue, had a true and actual value of $11,173,100. In 2008, the plaintiff authorized its tenant, Wal-Mart Real Estate Business Trust (Wal-Mart), to appeal the assessment of the subject property for the October 1, 2007 grand list to the city's board of assessment appeals (board). As a result of this appeal, the board reduced the assessed value

from $11,173,100 to $9,875,700 for the revaluation date. Neither Wal-Mart nor the plaintiff appealed to the Superior Court from the board's decision, as authorized by General Statutes § 12-117a.

The plaintiff subsequently challenged the assessment of the same property for the October 1, 2009 grand list by filing an appeal with the board pursuant to General Statutes § 12-111.[1] The board made no change in the valuation. The plaintiff appealed from that decision pursuant to § 12-117a, claiming that its property valuation was grossly excessive, disproportionate and unlawful. The city filed an answer and a special defense, claiming that the plaintiff was barred from bringing the appeal until the next statutorily mandated revaluation scheduled for October 1, 2012. The city then filed a motion for summary judgment on the same ground as was set forth in its special defense. The plaintiff filed a memorandum in opposition to the motion together with an affidavit by one of its officers. The court heard argument and issued its memorandum of decision on April 8, 2011, granting the motion and rendering judgment in favor of the city without costs to either party.

In its memorandum of decision, the court identified three issues: (1) whether a taxpayer, having taken an appeal to the board for the revaluation year, may take a subsequent appeal to the board to challenge the valuation of its property within the same revaluation period; (2) whether the plaintiff is collaterally estopped from bringing the subsequent tax appeal; and (3) whether

[1] General Statutes § 12-111 (a) provides in relevant part: "Any person . . . claiming to be aggrieved by the doings of the assessors of such town may appeal therefrom to the board of assessment appeals. Such appeal shall be filed, in writing, on or before February twentieth. . . . The board shall determine all appeals for which the board conducts an appeal hearing and send written notification of the final determination of such appeals to each such person within one week after such determination has been made. Such written notification shall include information describing the property owner's right to appeal the determination of such board. . . ."

No. 09-196 of the 2009 Public Acts (P.A. 09-196), which amended § 12-111, had retroactive or prospective effect.[2] The court concluded that the amendment set forth in P.A. 09-196 was a substantive change to the law and could not be applied retroactively so as to preclude the plaintiff's second challenge to the valuation of its property within the revaluation period. It further concluded that the plaintiff was not collaterally estopped by the board's action on its appeal from the October 1, 2007 grand list because no appeal was taken from that action to the Superior Court pursuant to § 12-117a. According to the court, collateral estoppel did not apply because "there was no judicial litigation of the issues involved in this case . . . ." Nevertheless, the court determined that summary judgment was appropriate because "Wal-Mart's appeal reset the valuation of the subject property as of the revaluation year of October 1, 2007. Once Wal-Mart availed itself of the appellate process, it bound the property owner for each successive tax year until the next citywide revaluation." The court concluded that "[i]n effect, it would be an interim revaluation, contrary to the will of the legislature, if the plaintiff were to obtain a further reduction in its assessment, as of an interim date such as October 1, 2009." This appeal followed.

On appeal, the plaintiff claims that the court improperly concluded that it sought an unlawful interim

---

[2] Section 1 of P.A. 09-196 amended § 12-111 (a) by adding, inter alia, the following language: "When the board [of assessment appeals] increases or decreases the gross assessment of any taxable real property or interest therein, the amount of such gross assessment shall be fixed until the assessment year in which the municipality next implements a revaluation of all real property pursuant to [General Statutes §] 12-62, unless the assessor increases or decreases the gross assessment of the property to (1) comply with an order of a court of jurisdiction, (2) reflect an addition for new construction, (3) reflect a reduction for damage or demolition, or (4) correct a factual error by issuance of a certificate of correction. . . ." This section of P.A. 09-196 became effective October 1, 2009.

revaluation.[3] The plaintiff argues that the court mischaracterized its appeal. It claims that it was challenging an illegal assessment that occurred between revaluation years and that such a challenge is permissible under our law.[4] The city counters that the court's rendering of summary judgment was appropriate because § 12-111 (a), as amended, expressly provides that any reduction in the assessment of real property for a particular year fixes that reduced assessment until the next citywide revaluation. The city further argues that the plaintiff was collaterally estopped from bringing the second tax appeal by virtue of the unappealed decision of the board in the first Wal-Mart tax appeal.[5] Because we conclude that § 12-111 (a), as amended by P.A. 09-196, precluded the plaintiff's subsequent tax

[3] "Our Supreme Court has consistently defined an interim revaluation in relation to the legislatively mandated, periodic revaluation requirement of [General Statutes] § 12-62 as a revaluation conducted in the years *between* statutorily prescribed revaluations." (Emphasis in original.) *Waterbury Hotel Equity, LLC* v. *Waterbury*, 85 Conn. App. 480, 497, 858 A.2d 259, cert. denied, 272 Conn. 901, 863 A.2d 696 (2004).

[4] "[I]t is true that § 12-117a prohibits a taxpayer from demanding that the assessor conduct an interim revaluation . . . but allows a taxpayer to challenge an illegal assessment *within* a statutorily mandated revaluation period . . . ." (Citation omitted; emphasis in original.) *Waterbury Hotel Equity, LLC* v. *Waterbury*, 85 Conn. App. 480, 498, 858 A.2d 259, cert. denied, 272 Conn. 901, 863 A.2d 696 (2004).

[5] In the plaintiff's reply brief, it states that the city's arguments are not reviewable by this court because the city failed to announce its intention to raise the alternate grounds for affirmance by filing a preliminary statement of issues pursuant to Practice Book § 63-4 (a) (1) (A). The plaintiff's argument is not persuasive. Absent exceptional grounds, an appellate court should not review an alternate ground for affirmance that was not raised before, and decided by, the trial court. *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 498–500, 43 A.3d 69 (2012). In the present case, the city's claims were raised before and decided by the trial court. Further, an appellate court "generally has reviewed alternate grounds for affirmance even though the appellee has not complied with the requirement to identify such claims in a preliminary statement, when doing so would not prejudice the appellant." Id., 499 n.22. The plaintiff has not claimed any prejudice that resulted from the city's failure to file a preliminary statement of issues pursuant to Practice Book § 63-4 (a) (1) (A).

appeal, we affirm the trial court's decision on a dispositive alternate ground, and it is not necessary to reach the remaining issues raised by the plaintiff's appeal.[6]

We begin with our well settled standard of review for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Massey* v. *Branford*, 119 Conn. App. 453, 457–58, 988 A.2d 370, cert. denied, 295 Conn. 921, 991 A.2d 565 (2010).

Section 12-111 authorizes a taxpayer to take an appeal to the board of assessment appeals when that taxpayer claims to be aggrieved by the valuation of the taxpayer's property by the municipality's assessors. Public Act 09-196 amended subsection (a) of § 12-111 by adding, in relevant part, the following language: "When the board increases or decreases the gross assessment of any taxable real property or interest therein, the amount of

---

[6] We note, however, that the doctrine of collateral estoppel also may apply to determinations of administrative agencies under certain circumstances. *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 22 n.6, 783 A.2d 1157 (2001).

such gross assessment shall be fixed until the assessment year in which the municipality next implements a revaluation of all real property pursuant to [General Statutes §] 12-62, unless the assessor increases or decreases the gross assessment of the property to (1) comply with an order of a court of jurisdiction, (2) reflect an addition for new construction, (3) reflect a reduction for damage or demolition, or (4) correct a factual error by issuance of a certificate of correction. . . ." That section of P.A. 09-196 became effective October 1, 2009. The plaintiff does not contest the city's claim that if this provision of P.A. 09-196 is applied retroactively, the plaintiff would be precluded from seeking a further reduction in the assessed value of its property.

"Whether to apply a statute retroactively or prospectively depends upon the intent of the legislature in enacting the statute. . . . In order to determine the legislative intent, we utilize well established rules of statutory construction. Our point of departure is General Statutes § 55-3, which states: No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect. The obligations referred to in the statute are those of substantive law. . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. . . . The rule is rooted in the notion that it would be unfair to impose a substantive amendment that changes the grounds upon which an action may be maintained on parties who have already transacted or who are already committed to litigation. . . . In civil cases, however, unless considerations of good sense and justice dictate otherwise, it is presumed that procedural statutes will be applied retrospectively. . . . Procedural statutes have been

traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact. . . . [A]lthough we have presumed that procedural or remedial statutes are intended to apply retroactively absent a clear expression of legislative intent to the contrary . . . a statute which, in form, provides but a change in remedy but actually brings about changes in substantive rights is not subject to retroactive application. . . . While there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." (Citations omitted; internal quotation marks omitted.) *D'Eramo* v. *Smith*, 273 Conn. 610, 620–21, 872 A.2d 408 (2005).

"We presume that, in enacting a statute, the legislature intended a change in existing law. . . . This presumption, like any other, may be rebutted by contrary evidence of the legislative intent in the particular case. An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act. . . . Furthermore, an amendment that is intended to clarify the intent of an earlier act necessarily has retroactive effect. . . .

"To determine whether the legislature enacted a statutory amendment with the intent to clarify existing legislation, we look to various factors, including, but not limited to (1) the amendatory language . . . (2) the declaration of intent, if any, contained in the public act . . . (3) the legislative history . . . and (4) the circumstances surrounding the enactment of the amendment, such as, whether it was enacted in direct response to a judicial decision that the legislature deemed incorrect . . . or passed to resolve a controversy engendered by statutory ambiguity . . . . In the cases wherein this court has held that a statutory amendment had been

intended to be clarifying and, therefore, should be applied retroactively, the pertinent legislative history has provided uncontroverted support . . . for the conclusion that the legislature considered the amendatory language to be a declaration of the legislature's *original* intent rather than a change in the existing statute." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Middlebury* v. *Dept. of Environmental Protection*, 283 Conn. 156, 172–74, 927 A.2d 793 (2007).

We begin by looking to the language of § 1 of P.A. 09-196. Because the language in the amendment is silent with respect to whether it clarifies or changes § 12-111 (a), we look to its legislative history and the circumstances surrounding its enactment to ascertain the intent of the legislature. The language at issue was proposed as an amendment to Substitute House Bill No. 6041 by several sponsors, including Representative J. Brendan Sharkey. Representative Sharkey was asked to summarize the amendment during the session of the House of Representatives held on May 20, 2009. Representative Sharkey's remarks were as follows: "Mr. Speaker, this amendment simply clarifies what I think is common practice throughout the state, but apparently has not been applied evenly by our assessors.

"It simply says that when someone brings an assessment appeal and wins an adjustment to their assessment by the local assessor, whether it's through the local board of assessment appeals or through court, that that change in the assessment shall remain in effect until the next reval[uation] occurs in that town.

"Apparently there have been a couple of examples of situations where the assessor has granted the adjustment to the taxes in the year that it was claimed on appeal, but then reverted back to the old value in the second year and subsequent years.

"So this is just to clarify that our laws require that the change [in the] assessment stays in effect until the

next reval[uation], and I urge adoption." 52 H.R. Proc. 16, Pt., 2009 Sess., p. 5092. The amendment was adopted.

The language in that amendment, which revised § 12-111 (a), was contained in § 1 of Substitute House Bill No. 6041. That portion of the bill became effective October 1, 2009. Sections 2 and 3 of Substitute House Bill No. 6041 specifically provided that the amendatory language in those sections, revising General Statutes §§ 12-63b and 12-63c, respectively, would be "applicable to assessment years commencing on or after October 1, 2009." The legislature made it clear, by the use of such language, that §§ 2 and 3 of Substitute House Bill No. 6041 would be applied prospectively. Given the remarks of Representative Sharkey[7] and the omission of the prospective application language found in §§ 2 and 3 of Substitute House Bill No. 6041, we conclude that the language at issue in § 1 of that bill was simply a clarification of the original statutory intent of the legislature and was to be applied retroactively. Accordingly, the trial court ultimately reached the correct result in rendering summary judgment in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] In the absence of anything in the legislative history to contradict a sponsor's direct and unequivocal statement regarding an amendment's clarifying purpose, a reviewing court affords substantial weight to the characterization of its objective and effect. See *Middlebury* v. *Dept. of Environmental Protection*, supra, 283 Conn. 177.