******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WINSTON Y. LI ET AL. *v.* HENRY
K. YAGGI III ET AL.
(AC 40683)

Alvord, Sheldon and Norcott, Js.

*Syllabus*

The plaintiffs, who had entered into an agreement to purchase a parcel of
residential property from the defendants, brought the present action
seeking, inter alia, the return of certain contractual deposits pursuant to
a mortgage contingency clause. Shortly before expiration of the relevant
contingency date, the plaintiffs sent the defendants an e-mail stating
that they had been unable to secure a mortgage and requesting an
extension. Although the defendants responded that they would be willing
to agree to an extension if the plaintiffs provided certain additional
information, that information was never provided. After the contingency
date passed, the plaintiffs received notices from two banks enumerating
certain problems with their mortgage applications. On the basis of these
notices, the plaintiffs requested termination of the agreement and a
return of their deposits. Following a trial to the court, the court issued
a memorandum of decision concluding that the plaintiffs' failure to
diligently pursue financing and their failure to provide a timely written
notice of termination constituted a breach of the agreement, and that,
therefore, the defendants were entitled to retain the deposits as liqui-
dated damages. Specifically, the court concluded the plaintiffs' e-mail
did not constitute a written notice of termination but, rather, merely
served as a request for an extension. The defendants subsequently filed
a motion seeking attorney's fees pursuant to the agreement, which the
court granted. Thereafter, the court rendered judgment in favor of the
defendants in accordance with its decision, and the plaintiffs appealed
to this court. *Held*:

1. The trial court's finding that the plaintiffs failed to diligently pursue
financing was clearly erroneous; in light of the terms of the agreement,
the question for the court was whether the plaintiffs used reasonable
diligence in their efforts to pursue a written mortgage commitment on
or before the commitment date, and the court, in reaching the conclusion
that the plaintiffs had failed to fulfill their obligation under the
agreement, improperly relied solely on the notices from the plaintiffs'
banks, which were ambiguous as to whether they reflected efforts of
the plaintiffs within the relevant time period and provided no suggestion
as to whether the plaintiffs had previously been notified, prior to the
commitment date, of any deficiencies in their applications, as the court
failed to properly focus on the diligence of the efforts made by the
plaintiffs up to the commitment date and made no finding that there
had been a lack of reasonable diligence in that earlier time period.

2. The trial court erred in interpreting the mortgage contingency clause in a
manner requiring the plaintiffs to provide a written notice of termination;
given that, under the clear language of the mortgage contingency, if the
plaintiffs provided the defendants with notice by the commitment date
of their inability to obtain a written commitment by the commitment
date, the agreement would have been null and void and the plaintiffs
would have been entitled to the return of their deposits, the only question
for the court was whether the plaintiffs' e-mail, taken as a whole, con-
tained sufficient language to notify the defendants of the plaintiffs'
inability to obtain financing by the contingency date, and the court's
error in interpreting the plaintiffs' obligation under the contract as requir-
ing notice of termination of the agreement left that question unanswered.

3. This court declined to address the plaintiffs' claim regarding the reason-
ableness of the trial court's award of attorney's fees, as this court's
reversal of the trial court's judgment in favor of the defendants also
required vacatur of the award of attorney's fees.

4. The defendants could not prevail on their claim, raised as an alternative
ground for affirming the judgment, that the plaintiffs should be equitably
estopped from claiming that they intended their e-mail to terminate the
agreement because they continued to act as if the agreement remained

in effect; although the defendants were not precluded from raising an equitable estoppel claim on remand, the record was inadequate to review that claim in the present appeal, as the doctrine of equitable estoppel was neither raised before, nor addressed by, the trial court.

Argued May 24—officially released October 30, 2018

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New Haven and tried to the court *Wilson, J.*; judgment for the defendants, from which the plaintiffs appealed to this court; thereafter, the court, *Wilson, J.*, denied the plaintiffs' motion for articulation and granted the plaintiffs' motion for rectification. *Reversed*; *new trial*.

*Winston Y. Li*, self-represented, and *Liping Wang*, self-represented, the appellants (plaintiffs).

*Philip G. Kent*, with whom, on the brief, was *Adam D. Miller*, for the appellees (defendants).

*Opinion*

ALVORD, J. The self-represented plaintiffs, Winston Y. Li and Liping Wang, appeal from the judgment of the trial court, rendered after a trial to the court, in favor of the defendant, Valerie M. Yaggi, individually and as administratrix of the estate of Henry Yaggi, on the plaintiffs' two count complaint alleging breach of the parties' purchase and sale agreement and breach of contract.[1] On appeal, the plaintiffs claim that the court (1) erroneously found that the plaintiffs failed to diligently pursue a written mortgage commitment, (2) erroneously found that the plaintiffs failed to give notice of their inability to obtain financing for the real estate purchase by the agreed upon commitment date,[2] and (3) erred in awarding the defendant attorney's fees. The defendant raises the doctrine of equitable estoppel as an alternative ground for affirmance of the court's decision. We reverse the judgment of the trial court.

The record reveals the following facts and procedural history. On October 26, 2012, the defendant entered into a purchase and sale agreement (agreement) with the plaintiffs with respect to a parcel of real property located at 45 Wickford Place in the town of Madison (property). The purchase price of the property was $810,000, and the plaintiffs submitted deposits totaling $25,000.

The agreement contained a mortgage contingency clause in paragraph 6, which stated: "Buyer's obligation is contingent upon Buyer obtaining financing as specified in this paragraph. Buyer agrees to apply for such financing immediately and diligently pursue a written mortgage commitment on or before the Commitment Date. . . . If Buyer is unable to obtain a written commitment and notifies Seller in writing by 5:00 p.m. on said Commitment Date, this Agreement shall be null and void and any Deposits shall be immediately returned to Buyer. Otherwise, the Financing Contingency shall be deemed satisfied and this Agreement shall continue in full force and effect." The agreement specified that the commitment date was thirty days from the date of the October 26 agreement, which was November 25. Because November 25 was a Sunday, the commitment date was November 26. The closing date was set for December 3.

Paragraph 14 of the agreement provided: "If Buyer fails to comply with any Terms of this Agreement by the time set forth for compliance and Seller is not in default, Seller shall be entitled to all initial and additional deposit funds provided for in section 4, whether or not Buyer has paid the same, as liquidated damages and both parties shall be relieved of further liability under this Agreement. If legal action is brought to enforce any provision of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees."

On November 24, 2012, the plaintiffs sent an e-mail to the defendant, stating: "Attached is a request of mortgage extension. Due to the Hurricane Sandy and Thanksgiving holiday. We won't be able to obtain a mortgage commitment by 5 [p.m.] today. We request your approval of extension. We expect a commitment from a bank next week. Please sign and return to us ASAP." (November 24 e-mail) The plaintiffs attached to their e-mail a change form, which proposed an amended commitment date of December 3, 2012, and an amended closing date of December 14, 2012. The change form was signed by the plaintiffs.

The defendant forwarded the e-mail to her realtor, Lorey Walz, on November 24. The same day, Walz e-mailed Blake Ruchti, the plaintiffs' realtor, stating: "We have received the request to extend the mortgage commitment date and closing date. The sellers, Hank and Val Yaggi, are willing to do so after receiving verification from the bank that you have a mortgage approval contingent upon a bank appraisal. . . . Hank and Valerie Yaggi would like to see you purchase the home but have to be confident that a bank commitment will be given." The defendant did not sign the change form.

The plaintiffs submitted a second change form, signed by the plaintiffs and dated November 30, 2012, to the defendant. The second change form proposed an amended commitment date of December 14, 2012, and an amended closing date of December 21, 2012. The defendant handwrote, next to the amended commitment and closing dates, "[t]ime is of the essence," and initialed next to those handwritten additions. The defendant signed the second change form on December 4, 2012. The plaintiffs did not initial next to those handwritten additions, but they subsequently executed a third and a fourth change form, requesting further extensions of the commitment and closing dates. Neither form was signed by the defendant. The fourth change form proposed an amended commitment date of January 18, 2013, and an amended closing date of January 25, 2013.

On February 17, 2013, the plaintiffs e-mailed the defendant's counsel, James Segaloff, following up on a conversation from February 6, 2013, in which they told Segaloff that the first bank to which they applied for a mortgage had denied their loan application, the second such bank had requested an affidavit of repair for the roof before issuing a commitment, and the third such bank had not yet responded. In their e-mail, the plaintiffs stated: "We have requested for contract termination but no response from your clients. . . . Please advise the status and their consideration of the termination of the contract." The plaintiffs requested return of their deposits and attached a notice of loan denial from the first bank, United Wholesale Mortgage, dated December 13, 2012, and a suspense notice from the

second bank, Mortgages Services III, LLC, dated December 6, 2012.[3]

On February 27, 2014, the plaintiffs commenced this action, alleging in relevant part that the defendant had breached the purchase and sale agreement by "not timely releas[ing] the deposit[s] . . . ." Both parties moved for summary judgment, those motions were denied, and the matter was tried to the court on March 9, 2017. The parties submitted proposed findings of fact and conclusions of law. On July 25, 2017, the court issued a memorandum of decision, finding that the plaintiffs had breached the purchase and sale agreement by failing (1) to timely terminate the contract, and (2) to diligently pursue financing as required under the agreement. Specifically, the court concluded that the November 24 e-mail sent by the plaintiffs did not constitute written notice of termination of the agreement, but rather served as a request for an extension of the commitment and closing dates. The court further found that none of the change forms submitted by the plaintiffs had been agreed upon by the parties and, thus, that the original commitment date remained operative. Because the plaintiffs did not provide written notice of termination by 5 p.m. on the commitment date, the court concluded that the defendant was entitled to retain the deposits.

Regarding the requirement to diligently pursue financing, the court relied on the two December, 2012 "mortgage denial notifications," provided by the plaintiffs to the defendant on February 17, 2013. The court found that the notifications "indicated that the plaintiffs did not fully complete their loan applications, and were thus denied financing." The court noted that the plaintiffs had submitted the third and fourth change forms requesting extensions of the commitment date after the issuance of the December denial notifications, at which time they were "fully aware that they had been denied a mortgage by two banks." Thus, the court concluded that the plaintiffs had breached the agreement by failing to pursue financing in a diligent manner.

Finally, the court concluded that the plaintiffs had defaulted on the agreement, triggering the liquidated damages clause set forth in paragraph 14 of the agreement. The court found that the amount of the deposits, $25,000, was a reasonable amount for the defendant to retain as liquidated damages because that sum represented only three percent of the $810,000 purchase price of the property and the defendant had testified that the delay occasioned by the plaintiffs had ultimately caused the defendant to sell the property for $135,000 less than the contract price to which the parties had agreed. With respect to the defendant's request for attorney's fees, the court ordered the defendant to file a motion, together with a supporting affidavit, and indicated that it would "determine whether reasonable

attorney's fees shall be awarded" after a hearing on the motion.

The plaintiffs filed this appeal on July 28, 2017. On January 29, 2018, the court awarded the defendant attorney's fees in the amount of $38,000 and costs, after which the plaintiffs filed an amended appeal. Additional facts shall be set forth as necessary. We now turn to the plaintiffs' claims on appeal.

I

In the present case, the trial court determined that the plaintiffs were not entitled to the return of their deposits because they had not complied with the terms of the mortgage contingency clause. Specifically, the court found that the plaintiffs failed both to diligently pursue a written mortgage commitment and to give the notice to the defendant as described in the mortgage contingency clause. We conclude that the court's finding as to diligence was clearly erroneous because it was not specific to the relevant timeframe. We further conclude that the court's finding as to notice rested on a misinterpretation of the language contained in the mortgage contingency clause, in that the court construed the clause as requiring notice of termination of the agreement, rather than notice of an inability to obtain a written commitment by the commitment date. Consequently, the court's findings did not properly resolve the plaintiffs' breach of contract claim seeking to invoke the mortgage contingency clause's provision for the return of their deposits. The central questions that should have been decided by the court were (1) whether the plaintiffs diligently pursued a written mortgage commitment on or before the commitment date,[4] and (2) whether, if they were unable to obtain a written commitment by the commitment date, they so informed the defendant in writing by 5 p.m. on that date.

We begin by setting forth the general law applicable to mortgage contingency clauses. A mortgage contingency clause contained in a contract for the sale of real property generally allows a purchaser to recover his or her deposit if the purchaser is unable to secure a mortgage and has complied with the provisions of the contingency clause. See generally 77 Am. Jur. 2d, Vendor and Purchaser § 531 (2016) ("The purchaser may be expressly given the privilege or option to rescind the contract and to recover any payments made by him or her where the contract of sale provides for the cancellation of the contract[5] in the event that the purchaser is unable to obtain a mortgage or loan within a specified time. Accordingly, when a contract for the sale of real property contains a mortgage contingency clause . . . they are entitled to recover their down payment if the mortgage is not in fact approved through no fault of their own. . . . On the other hand, where the purchaser disregards the terms of a financing contingency contained in a contract for sale . . . the purchaser would not

be entitled to invoke the contractual contingency and recover his or her down payment." [Footnotes added and omitted.]). The condition is "meant to protect the buyer. It is a condition of the buyer's duty, not a condition of the seller's duty under the contract. Upon the nonoccurrence of the condition, i.e., the buyer's obtaining financing, the buyer is ipso facto excused from performance." (Footnotes omitted.) 92 C.J.S., Vendor and Purchaser § 197 (2018); see also 2 Restatement (Second), Contracts § 225, illustration (8) (1981); id., § 226, illustration (4).

In the present case, the plain language of the provision in question, stating that the "Buyer's obligation is contingent upon Buyer obtaining financing," evidences the intent of the parties that the provision be a condition precedent to the plaintiffs' obligation to perform their agreement to purchase. Our appellate courts have previously interpreted similar mortgage contingency clauses and determined them to be conditions precedent to the contract. See, e.g., *Luttinger* v. *Rosen*, 164 Conn. 45, 48, 316 A.2d 757 (1972);[6] see also *Barber* v. *Jacobs*, 58 Conn. App. 330, 335, 753 A.2d 430 ("[t]he primary issue in this appeal is whether the plaintiff made a reasonable effort to obtain a mortgage which was a condition precedent of the contract"), cert. denied, 254 Conn. 920, 759 A.2d 1023 (2000).[7] The parties do not dispute that the plaintiffs were "unable to obtain a written commitment" by the commitment date. They disagree, however, as to whether the plaintiffs diligently pursued such a written commitment before that date and whether they gave written notice of their inability to obtain a commitment in such a way as to entitle them to the return of their deposits.

A

The plaintiffs claim that the court erred in concluding that the plaintiffs breached the purchase and sale agreement by failing to diligently pursue financing.[8] Specifically, the plaintiffs argue that they provided all documents to two banks to which they applied for financing, and that the December, 2012, denial and suspense notices presented to the court evidenced their diligent pursuit of such financing. They contend that the court "failed to understand the mortgage process and didn't analyze the denial/suspense reasons, terms, and conditions."[9] The plaintiffs further argue that the agreement did not require applications to multiple banks and, thus, that their application to one bank was sufficient to comply with the agreement. The defendant argues that the trial court's finding that the plaintiffs "did not fully complete their loan applications" was supported by the December, 2012 denial and suspense notices. We agree with the plaintiffs that the court's finding that they failed to diligently pursue financing was clearly erroneous, although we do so on the basis that the court erroneously relied upon the December, 2012 denial and sus-

pense notices. Those notices were ambiguous as to whether they reflected the plaintiffs' efforts up to the commitment date and, therefore, shed light on the plaintiffs' diligence in pursuing financing during the relevant timeframe, or whether they reflected plaintiffs' efforts after the commitment date, i.e., after the deadline for the plaintiffs' use of diligence had passed.[10]

The mortgage contingency clause in the parties' agreement required the plaintiffs to diligently pursue a written mortgage commitment on or before the commitment date. Similar provisions have been interpreted by our appellate courts as "imply[ing] a promise by the borrower that he or she will make reasonable efforts to secure a suitable mortgage." (Internal quotation marks omitted.) *Barber* v. *Jacobs*, supra, 58 Conn. App. 335; see also *Phillipe* v. *Thomas*, 3 Conn. App. 471, 473, 489 A.2d 1056 (1985).

In *McCoy* v. *Brown*, 130 Conn. App. 702, 705, 708, 24 A.3d 597, cert. denied, 302 Conn. 941, 29 A.3d 467 (2011), this court explained that a mortgage contingency clause expressly requiring the buyers to "make application [for a loan] forthwith and pursue the same diligently," obligated the buyers to "use reasonable diligence in their efforts to obtain a mortgage commitment." (Internal quotation marks omitted.) "Reasonableness . . . is an objective standard, involving an analysis of what a person with ordinary prudence would do given the circumstances, without accounting for any particular knowledge or skill. . . . Whether the plaintiff's actions constituted reasonable efforts to satisfy the contractual condition is a factual determination for the trial court." (Internal quotation marks omitted.) Id., 708.

The question for the court was whether the plaintiffs had used reasonable diligence in their efforts to pursue a written mortgage commitment on or before the commitment date. By the express terms of the agreement, that obligation terminated on the commitment date. In reaching the conclusion that the plaintiffs failed to diligently pursue a written mortgage commitment on or before the commitment date, however, the court relied solely on the December, 2012 denial and suspense notices, which were ambiguous as to whether they reflected efforts of the plaintiffs within the relevant time period. Although the trial court found that the two notices "indicated that the plaintiffs did not fully complete their loan applications," the notices themselves provide no suggestion as to whether the plaintiffs were previously notified, prior to the commitment date, of any deficiencies in their applications. The court, in relying exclusively upon the denial and suspense notices, failed to properly focus on the diligence of the efforts made by the plaintiffs up to the commitment date. The court made no specific finding that there had been a lack of reasonable diligence in that earlier time period. Accordingly, the court's finding that the plain-

tiffs failed to diligently pursue financing is clearly erroneous.

## B

The plaintiffs next contend that the court erroneously found that they failed to give written notice of their inability to obtain financing for the real estate purchase by the commitment date. They argue that they provided such notice by way of their November 24 e-mail, wherein they stated: "Attached is a request of mortgage extension. Due to the Hurricane Sandy and Thanksgiving holiday. We won't be able to obtain a mortgage commitment by 5 [p.m.] today. We request your approval of extension. We expect a commitment from a bank next week. Please sign and return to us ASAP." The plaintiffs argue that the November 24 e-mail satisfied their obligation under the agreement to provide notice of their inability to obtain financing by the commitment date, and that, contrary to the court's finding, the agreement did not require the plaintiffs to declare the contract terminated. As support for their argument, the plaintiffs identify a separate provision of the agreement that expressly requires the buyer to notify the seller of the "Buyer's election to terminate this Agreement." The defendant responds that "the text of the . . . e-mail alone is strong evidence in the record that plaintiffs did not seek a termination at all, but merely requested an extension." The defendant further emphasizes the plaintiffs' attachment of a change form to their e-mail as evidence that the plaintiffs sought an extension, not a termination of the agreement. We conclude that the court erred in interpreting the mortgage contingency clause to require *notice of termination* and consequently failed to make a factual determination as to whether the November 24 e-mail constituted *notice of an inability to obtain a written commitment.*

We first set forth our standard of review. "[T]he question of contract interpretation is a question of the parties' intent. . . . Ordinarily, that is a question of fact. . . . If, however, the language of the contract is clear and unambiguous, the court's determination of what the parties intended in using such language is a conclusion of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *CAS Construction Co.* v. *East Hartford*, 82 Conn. App. 543, 552, 845 A.2d 466 (2004); see also *Southport Congregational Church—United Church of Christ* v. *Hadley*, 320 Conn. 103, 115, 128 A.3d 478 (2016) ("The proper interpretation of the [mortgage contingency] clause requires us to determine the intent of the parties. . . . The meaning properly to be ascribed to [a] mortgage commitment clause [is] to be determined, as a matter of fact, from the language of the contract, the circumstances attending its negotiation, and the con-

duct of the parties in relation thereto. . . . Like other contracts, though, the meaning of unambiguous language in a mortgage contingency clause is determined as a matter of law." [Citations omitted; internal quotation marks omitted.]).

In general, "[a] mortgage contingency clause may require that a purchaser give the vendor written notice of inability to obtain financing and if the purchaser does not adequately comply with such provision, he or she is not entitled to a refund." 92A C.J.S., Vendor and Purchaser § 709 (2018). In determining whether the buyer's notice is sufficient under the terms of the contract, the court should consider the entire communication. See *Zullo* v. *Smith*, 179 Conn. 596, 605, 427 A.2d 409 (1980) (concluding that "taken as a whole, the defendant's letter contains sufficient language to notify the plaintiff of the defendant's inability to obtain a building permit" in accordance with building permit contingency clause).

The provision at issue in the present case stated in relevant part: "If Buyer is unable to obtain a written commitment and notifies Seller in writing by 5:00 p.m. on said Commitment Date, this Agreement shall be null and void and any Deposits shall be immediately returned to Buyer." The clear meaning of this provision is that if the plaintiffs were to give the defendant notice by the commitment date of their inability to obtain a written commitment by the commitment date, the agreement would be null and void and the plaintiffs would be entitled to the return of their deposits. The trial court instead considered "whether the plaintiffs complied with the terms of the agreement by providing the [defendant] with *notice of termination of the agreement* . . . ." (Emphasis added.) Because the provision at issue does not require the buyer to include in the writing a notice of termination of the agreement, the court addressed the wrong question.

Indeed, as the plaintiffs argue, an examination of the agreement as a whole reveals that where the parties intended to require a notice of termination, the agreement expressly included language to that effect. "[W]hen interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Rehab Associates*, 300 Conn. 314, 322, 12 A.3d 995 (2011). Specifically, the agreement's inspection contingency clause permits the "Buyer [to] notify Seller . . . of Buyer's election to terminate this Agreement." In contrast, the provision at issue did not contemplate that the buyers would give notice of an election to terminate, but rather that they would give notice of their inability to obtain financing by the commitment date, which, in turn, would render the

agreement null and void. Any construction of the agreement that disregards this distinction must be rejected. See *Recall Total Information Management, Inc.* v. *Federal Ins. Co.*, 147 Conn. App. 450, 460, 83 A.3d 664 (2014) (rejecting broad construction of term "suit" where such construction would obliterate distinction between "suit" and "claim," and would create internal inconsistency in insurance contract), aff'd, 317 Conn. 46, 115 A.3d 458 (2015). Accordingly, the court should have determined whether the plaintiffs' November 24 e-mail, taken as a whole, contained sufficient language to notify the defendant of the plaintiffs' inability to obtain financing by the commitment date.

The court did find, and the parties agree, that the commitment date was never extended. Although the plaintiffs requested an extension of the commitment and closing dates in their November 24 e-mail, Walz replied that the Yaggis were only willing to agree to an extension "after receiving verification from the bank that you have a mortgage approval contingent upon a bank appraisal." Because the plaintiffs did not provide such verification, and therefore the condition was not fulfilled, the extension never became operative. See *Ziotas* v. *Reardon Law Firm, P.C.*, 111 Conn. App. 287, 304, 959 A.2d 1013 (2008) ("[a] reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counteroffer" [internal quotation marks omitted]), aff'd in part and rev'd in part on other grounds, 296 Conn. 579, 997 A.2d 453 (2010). Likewise, none of the change forms submitted by the plaintiffs to the defendant effectively changed the commitment and closing dates. The first change form, attached to the plaintiffs' November 24 e-mail, was never signed by the defendant. The defendant, after signing the second change form, indicated that "[t]ime is of the essence" next to each of the amended commitment and closing dates, which the plaintiffs never initialed. The third and fourth change forms were never signed by the defendant. Accordingly, the original commitment and closing dates were never extended.

The defendant argues that if the plaintiffs "really believed that they were terminating the agreement on November 24, 2012, when they sent the e-mail, there would be no reason for plaintiffs to ask for multiple extensions of the financing/commitment and closing dates. The underlying contract would have ceased to exist at that point and thus the financing/commitment and closing dates would have been null and void and would not need to be extended and plaintiffs would have had no reason to further pursue financing for the purchase." The defendant's argument relies heavily on the plaintiffs' intentions expressed within the November 24 e-mail and throughout their communications thereafter. The defendant argues that "[r]ather than expressing an inability to obtain financing as the plain-

tiffs' contend the e-mail actually represents that plaintiff *can* and *will* receive financing 'next week.' " (Emphasis in original.) Although the plaintiffs did seek an extension of the commitment and closing dates through their November 24 e-mail and subsequent change forms, it is undisputed that no agreement to an extension was ever reached. Thus, the only question for the court was whether the November 24 e-mail, taken as a whole, also contained sufficient language to notify the defendant of the plaintiffs' inability to obtain financing by the commitment date, as contemplated by the language contained in the mortgage contingency clause. The trial court's error in interpreting the plaintiffs' obligation under the contract left that question unanswered.

Having concluded that the court incorrectly interpreted the agreement's notice requirement and erroneously found that the plaintiffs had failed to diligently pursue financing, we conclude that the judgment must be reversed and that a remand to the trial court for a new trial is necessary. See *Phillipe* v. *Thomas*, supra, 3 Conn. App. 476–77 (remanding for new trial when there was no factual determination of reasonableness of plaintiff's efforts to secure financing because trial court had improperly applied a good faith standard).

## II

The plaintiffs' next claim is that the court erred in awarding the defendant attorney's fees. The plaintiffs claim that the award is "patently unreasonable . . . ." The defendant responds that the plaintiffs' claim fails because: (1) the defendant met her burden to set forth evidence that her attorney's fees were reasonable; (2) "the trial court properly performed a lodestar calculation, and evaluated the reasonableness of the fees based on the factors set forth in Rule 1.5 (a) of the Rules of Professional Conduct"; and (3) "the trial court did in fact reduce the lodestar value based on factors in Rule 1.5 (a) to arrive at a reasonable value of attorney's fees, which was well within its discretion." We need not address the reasonableness of the award because we conclude that our reversal of the court's judgment also requires that the award of attorney's fees be vacated. See *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 63, 578 A.2d 1054 (1990) ("In view of our reversal of the judgment in this case, it can no longer be said that the plaintiff prevailed in this action; she, therefore, has no claim for attorney's fees based on the judgment that we have reversed." [Internal quotation marks omitted.]).

## III

On appeal, the defendant raises the doctrine of equitable estoppel as an alternative ground for affirmance of the court's decision, claiming that the plaintiffs represented that they expected to receive a mortgage commitment and acted as if the agreement was still in effect

after the commitment date. The defendant argues that the plaintiffs "are estopped from claiming that they intended to terminate the agreement on November 24, 2012, because they continued to act under the terms of the agreement until at least January 11, 2013, even though the mortgage commitment date had passed and they had forfeited their right to any deposit monies when they failed previously to notify the [defendant] of any intent to terminate the agreement." The defendant claims that she relied on the plaintiffs' representations to her detriment, in that she kept the property off the market for almost six months and ultimately sold the property for $135,000 less than the contract price with the plaintiffs. We conclude that the record is inadequate to review this claim, which was not raised before the trial court.

Our Supreme Court has held that "[o]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . This rule applies equally to alternate grounds for affirmance." (Internal quotation marks omitted.) *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 498–99, 43 A.3d 69 (2012); see also *Samnard Associates, LLC* v. *New Britain*, 140 Conn. App. 290, 294 n.5, 58 A.3d 377 (2013) ("[a]bsent exceptional grounds, an appellate court should not review an alternate ground for affirmance that was not raised before, and decided by, the trial court"). Moreover, "[t]he appellee's right to file a [Practice Book] § 63-4 (a) (1) statement has not eliminated the duty to have raised the issue in the trial court." (Internal quotation marks omitted.) *Thomas* v. *West Haven*, 249 Conn. 385, 390 n.11, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000); see also *Perez-Dickson* v. *Bridgeport*, supra, 499.

"The party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous." (Internal quotation marks omitted.) *Celentano* v. *Oaks Condominium Assn.*, 265 Conn. 579, 614, 830 A.2d 164 (2003); see also *St. Germain* v. *St. Germain*, 135 Conn. App. 329, 334, 41 A.3d 1126 (2012) ("[w]hether a party has met his burden of proving equitable estoppel is a question of fact"). "Equitable estoppel is a doctrine that operates in many contexts to bar a party from asserting a right that it otherwise would have but for its own conduct. . . . In its general application, we have recognized that [t]here are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." (Internal quotation marks omitted.) *St. Germain*

v. *St. Germain*, supra, 334–35.

In the present case, the doctrine of equitable estoppel was not raised before the trial court. The defendant filed both a trial management report and a proposed statement of facts and conclusions of law, neither of which raised equitable estoppel as a defense.[11] During trial, the defendant's counsel did not reference estoppel in his opening or closing statements. Finally, in its memorandum of decision, the court never addressed any estoppel argument.

The defendant argues in her brief that the plaintiffs "intentionally concealed" the fact that they could not obtain financing "for the purpose of inducing the Yaggis to keep the property off the market." There were no findings made by the court as to intentional concealment or inducement to keep the property off the market.[12] Accordingly, we decline to review the defendant's equitable estoppel claim. See *Kline* v. *Kline*, 101 Conn. App. 402, 404 n.3, 922 A.2d 261 (declining to review defendant appellee's alternate ground for affirmance because court did not find requisite facts for her claim of equitable estoppel), cert. denied, 284 Conn. 901, 931 A.2d 263 (2007); see also *Conservation Commission* v. *Red 11, LLC*, 119 Conn. App. 377, 388, 987 A.2d 398 (record inadequate to review defendant's claim of municipal estoppel), cert. denied, 295 Conn. 924, 991 A.2d 566 (2010). We note, however, that the defendant is not precluded from raising equitable estoppel on remand.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[1] Henry K. Yaggi III, who was originally named as a defendant in this action, died during the pendency of the action, and Valerie Yaggi was substituted as the administratrix of Henry Yaggi's estate. Accordingly, we refer to Valerie Yaggi in both of her capacities as the defendant.

[2] For ease of discussion, we address the plaintiffs' claims in a different order than that in which they appear in their brief. Because the plaintiffs' first two claims are intertwined, we will address them together.

[3] As detailed in the court's memorandum of decision, the suspense notice included eleven "suspense reasons (conditions needed prior to approval)." See footnote 10 of this opinion.

The plaintiffs' e-mail also stated: "As we indicated in the termination letter, we did not think we would be able to get a loan for the purchase of the property. Per the mortgage contingency we wanted to terminate the contract and requested return of the deposits. For your convenience attached are the bank denial and suspension letters along with the termination letter and signed form. Please encourage your clients to sign the termination form and return to us. . . . We noticed your clients have reactivated the listing in the market. Please note they are not entitled to sell the property to another buyer(s) without terminate the contract with us."

The plaintiffs previously had executed a termination of purchase and sale agreement dated January 11, 2013. The plaintiffs included as the reason for termination "[t]he sellers did not sign or reject for extension of mortgage contingency." The defendant contends, and the trial court found, that there was no evidence establishing that the January 11 termination form was ever sent to the defendant.

[4] We note that the mortgage contingency clause also required the plaintiffs to "apply for . . . financing immediately . . . ." The court did not make any express findings regarding immediate application for financing, and

neither party addresses this requirement in their briefs.

[5] Note that mortgage contingency clauses must be considered according to the language used therein. For example, some clauses contemplate cancellation of the contract whereas others contemplate rendering the agreement null and void. Compare *McCoy* v. *Brown*, 130 Conn. App. 702, 705, 24 A.3d 597 (clause provided in part that "[i]n the event Buyer shall fail to secure said mortgage commitment . . . he shall have the option of terminating this Contract" [internal quotation marks omitted]), cert. denied, 302 Conn. 941, 29 A.3d 467 (2011), with *Aubin* v. *Miller*, 64 Conn. App. 781, 784, 781 A.2d 396 (2001) (clause provided in part that "[i]f Purchaser is unable to obtain a commitment for such loan . . . then this contract shall be null and void").

[6] The contract in *Luttinger* v. *Rosen*, supra, 164 Conn. 46, "was 'subject to and conditional upon the buyers obtaining first mortgage financing on said premises from a bank or other lending institution in an amount of $45,000 for a term of not less than twenty . . . years and at an interest rate which does not exceed [8.5 percent] per annum.' The plaintiffs agreed to use due diligence in attempting to obtain such financing. The parties further agreed that if the plaintiffs were unsuccessful in obtaining financing as provided in the contract, and notified the seller within a specific time, all sums paid on the contract would be refunded and the contract terminated without further obligation of either party."

[7] The contract in *Barber* v. *Jacobs*, supra, 58 Conn. App. 332–33, contained a mortgage contingency clause, which provided that the " '[a]greement [was] contingent upon Purchaser obtaining a commitment for a loan, to be secured by a first mortgage on the premises, in an amount not in excess of $1,300,000. . . .' The mortgage contingency required the plaintiff to 'make prompt application for such a loan' and 'to pursue said application with diligence.' "

[8] We note that the plaintiffs, in their principal brief to this court, reference certain documents that they identify as "new evidence" and include in their appendix. Their motion for articulation seeking to present the same documents was denied on the basis that the new evidence the plaintiffs sought to admit "consist[ed] of documents which the plaintiffs either had at the time of trial, or were available to the plaintiffs at the time of trial. The plaintiffs had every opportunity to introduce these documents into the record at the time of trial, however they failed to so . . . ." In their reply brief, the plaintiffs recognize that the documents were not presented before the trial court. Accordingly, we do not rely on those documents in reviewing the court's decision. See *Bank of America*, *N.A.* v. *Thomas*, 151 Conn. App. 790, 798 n.4, 96 A.3d 624 (2014).

[9] The plaintiffs also point to a typographical error in the court's memorandum of decision, which incorrectly referred to the Yaggis as the plaintiffs. As the defendant notes, the plaintiffs' motion for rectification was granted, effectively correcting the scrivener's error.

[10] The December 6, 2012 suspense notice, issued by Mortgage Services III, LLC, stated that the "LOAN IS SUSPENDED FOR INCOMPLETE FILE FOR SUBMISSION." The notice included the following eleven "SUSPENSE REASONS (CONDITIONS NEEDED PRIOR TO APPROVAL)": (1) "RESPA SUSPENSE DOCS MUST BE RECEIVED AND CLEARED PRIOR TO U/W"; (2) "PROVIDE TYPED 1003 & 1008 PER TERMS BEING SUBMITTED"; (3) "BORROWER SIGNED 'UNDISCLOSED DEBT DISCLOSURE' IS REQUIRED"; (4) "4506T RESULTS MUST BE RECEIVED VERIFYING 2 YR HISTORY"; (5) "DOCUMENT REASON FOR OMISSION OF CHASE AUTO LOAN DEBT AND PROVIDE PAPER TRAIL"; (6) "DOCUMENT AND SOURCE ANY FUNDS USED TO PAYOFF AUTO LOAN DEBT AND CREDIT REPORT SUPPLEMENT VERIFYING PAID"; (7) "2010 W2'S FOR BORROWER AND CO-BORROWER"; (8) "2010 COMPLETE TAX RETURNS W/ ALL PAGES . . . SCH-C INCOME MUST BE AVERAGED & VERIFIED FOR 2 YRS"; (9) "DOCUMENT EARNEST MONEY CHECKS PER CONTRACT FOR $25,000 PER CONTRACT AND EVIDENCE CLEARED BORROWERS ACCT"; (10) "SALES CONTRACT IS MISSING PAGE 4 OF 4 OF WILLIAM RAVEIS SALES CONTRACT"; (11) "FYI . . . PER CONTRACT, IF PROPERTY REQUIRES ROOF REPAIRS, MUST BE DONE PRIOR TO CLOSING . . . MUST EVIDENCE INSPECTION OF ROOF AND MIN. LIFE OF 3 YRS." The notice further stated that "ALL OF THE ABOVE REQUIRED ITEMS ARE REQUIRED FOR END INVESTOR UNDERWRITING REVIEW FOR CONSIDERATION."

The December 13, 2012 "Notice of Loan Denial," issued by United Wholesale Mortgage, provided the following reasons for denial of a mortgage loan: (1) "Credit History"; (2) "Insufficient Credit File for Cb . . . Borrower does

not have installment tradeline reporting for 24 months opened and active in the last 6 months"; and (3) "We do not grant credit to any applicant on the terms and conditions you have requested."

[11] In the defendant's pretrial management report, the defendant identified as the sole issue in dispute "[w]hether plaintiffs breached a certain real estate purchase and sale agreement resulting in the forfeiture of their deposit monies pursuant to that agreement under the liquidated damages clause." After trial, the defendant submitted proposed findings of fact and conclusions of law, in which the defendant requested that the court conclude that the plaintiffs breached the agreement.

[12] The trial court did note: "Interestingly, both notices of denial are dated December 6, 2012, and December 13, 2012, and the plaintiffs submitted the third and fourth change forms in December, 2012, both of which are dated December 14, 2012, and December 21, 2012, respectively, requesting an extension of the financing deadlines, when they were fully aware that they had been denied a mortgage by two banks." This notation, made in the context of whether the plaintiffs had diligently pursued financing, is insufficient to permit review of a newly asserted claim of equitable estoppel.