******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WINSTON Y. LI ET AL. *v.* VALERIE M. YAGGI, ADMINISTRATOR (ESTATE OF HENRY K. YAGGI III), ET AL.
## (AC 43957)

Cradle, Clark and Norcott, Js.

### *Syllabus*

The plaintiffs, who had entered into an agreement to purchase a parcel of residential property from the defendants, sought, inter alia, the return of certain contractual deposits pursuant to a mortgage contingency clause in the agreement. The mortgage contingency clause provided in relevant part that the plaintiffs' obligation was contingent on the plaintiffs obtaining financing. If the plaintiffs were unable to obtain a written mortgage commitment and notified the defendants in writing by 5 p.m. on the mortgage commitment date, the agreement would be null and void and any deposits would be returned to the plaintiffs, otherwise, the agreement would continue in full force and effect. The agreement also contained a liquidated damages clause, which provided that, if the plaintiffs failed to comply with the terms of the agreement by the time set forth for compliance, the defendants would be entitled to the deposit funds. Two days before the expiration of the relevant contingency date, the plaintiffs sent the defendants an e-mail in which they requested an extension of the mortgage commitment and closing dates. They explained that they would not be able to obtain a mortgage commitment by 5 p.m. that day, namely, the date that the e-mail was sent, but that they expected a mortgage commitment from a bank the following week. Although the defendants responded that they would be willing to agree to an extension if the plaintiffs provided certain additional information, that information was never provided. After the mortgage contingency date passed, the plaintiffs made three additional requests proposing amendments to extend the commitment and closing dates, but the parties did not reach an agreement on those requests. The plaintiffs subsequently requested termination of the agreement and a return of their deposits. After a trial to the court, judgment was rendered in favor of the defendants, from which the plaintiffs appealed to this court. *Held* that the trial court properly determined that the plaintiffs failed to provide adequate notice to the defendants of their inability to obtain a written mortgage commitment on or before the commitment date, as required pursuant to the parties' real estate agreement, and they were not entitled to recover their deposits: the plaintiffs' e-mail requesting an extension, viewed in its entirety, was equivocal with respect to whether the plaintiffs would be able to obtain a written mortgage commitment on or before the commitment date, as their notice of an expectation of receiving the commitment from a bank the following week left open the possibility that they might receive a written commitment by the commitment date; moreover, when the defendants declined to sign the proposed amendment attached to the plaintiffs' e-mail, the plaintiffs did not provide notice on or before the commitment date that they would not be able to obtain a written mortgage commitment by the commitment date or take any other subsequent actions consistent with a termination of the agreement and the right to a return of their deposits, and, as a result, the parties' agreement remained in effect and the defendants were entitled to retain the deposits when the plaintiffs subsequently failed to close on the property in accordance with the agreement.

Argued December 1, 2021—officially released May 31, 2022

### *Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Hon. Thomas J. Corradino*, judge trial referee; judgment for the defendants, from which the plain-

tiffs appealed to this court. *Affirmed.*

*Winston Y. Li*, self-represented, and *Liping Wang*, self-represented, the appellants (plaintiffs).

*Philip G. Kent*, for the appellees (defendants).

*Opinion*

CLARK, J. This action returns to us after this court's decision in *Li* v. *Yaggi*, 185 Conn. App. 691, 198 A.3d 123 (2018), in which we reversed the judgment of the trial court and remanded the case for a new trial. In the instant appeal, the self-represented plaintiffs, Winston Y. Li and Liping Wang, appeal from the judgment of the trial court rendered in favor of the defendant, Valerie M. Yaggi, individually and as administrator of the estate of Henry K. Yaggi III.[1] Following a trial to the court, the court concluded that the plaintiffs were not entitled to recover the deposits they made for the purchase of the defendant's home pursuant to a residential purchase and sale agreement (agreement).[2] On appeal, the plaintiffs claim that the court improperly concluded that they (1) failed to exercise due diligence in obtaining a written mortgage commitment, (2) did not provide adequate notice to the defendant that they were unable to obtain a mortgage commitment, and (3) waived any right they might have had to the deposits. We conclude that the court properly determined that the plaintiffs did not provide adequate notice to the defendant that they were unable to obtain a mortgage commitment pursuant to the terms of the agreement.[3] Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On October 26, 2012, the parties executed the agreement. The agreement contemplated that the plaintiffs would buy from the defendant a parcel of real property located at 45 Wickford Place in the town of Madison (property) for $810,000. Pursuant to the agreement, the plaintiffs made three separate deposits totaling $25,000, which were held in escrow by the defendant's real estate agent, Lorey Walz.

The agreement included a mortgage contingency clause, which stated: "Buyer's obligation is contingent upon Buyer obtaining financing as specified in this paragraph. Buyer agrees to apply for such financing immediately and diligently pursue a written mortgage commitment on or before the Commitment Date. . . . If Buyer is unable to obtain a written commitment and notifies Seller in writing by 5:00 p.m. on said Commitment Date, this Agreement shall be null and void and any Deposits shall be immediately returned to Buyer. Otherwise, the Financing Contingency shall be deemed satisfied and this Agreement shall continue in full force and effect." The commitment date was November 26, 2012.[4] The closing was to occur no later than December 3, 2012.

The agreement also included a liquidated damages clause, which stated in relevant part: "If Buyer fails to comply with any Terms of this Agreement by the time set forth for compliance and Seller is not in default, Seller shall be entitled to all initial and additional deposit funds provided for in section 4 [of the agree-

ment], whether or not Buyer has paid the same, as liquidated damages and both parties shall be relieved of further liability under this Agreement. . . ."

On Saturday, November 24, 2012, the plaintiffs e-mailed the defendant to request an extension of the commitment and closing dates. The subject line of the e-mail was "Mortgage Commitment Extension Request." The e-mail stated in relevant part: "Attached is a request of mortgage extension. Due to the Hurricane Sandy and Thanksgiving holiday. We won't be able to obtain a mortgage commitment by 5 [p.m.] *today*. We request your approval of extension. *We expect a commitment from a bank next week*. Please sign and return to us ASAP." (Emphasis added.) The plaintiffs attached to the e-mail a signed, proposed amendment to the agreement, seeking to extend the commitment date to December 3, 2012, and the closing date to December 14, 2012.

That same day, the defendant forwarded the e-mail to Walz. Walz e-mailed the plaintiffs' real estate agent, Blake Ruchti, stating: "We have received the request to extend the mortgage commitment date and closing date. The sellers, Hank and Val Yaggi, are willing to do so after receiving verification from the bank that you have a mortgage approval contingent upon a bank appraisal. . . . Hank and Valerie Yaggi would like to see [the plaintiffs] purchase the home but have to be confident that a bank commitment will be given." The defendant never signed the plaintiffs' proposed amendment to the agreement.

On Thursday, November 29, 2012, three days after the commitment date had passed, the plaintiffs informed Ruchti that they were experiencing a delay in obtaining a mortgage because of a credit issue, but stated that the loan would be approved and that the parties would be able to close by the end of December. The plaintiffs sent the defendant a second proposed amendment to the agreement, which was signed by the plaintiffs and dated November 30, 2012. The second proposed amendment proposed a commitment date of December 14, 2012, and a closing date of December 21, 2012. The defendant signed the second amendment on December 4, 2012. Next to both the amended commitment and closing dates, however, the defendant handwrote the phrase "[t]ime is of the essence" and initialed next to the handwritten modifications. The plaintiffs did not initial those modifications.

On December 8, 2012, the plaintiffs' counsel, James Tsui, e-mailed the defendant's counsel, James Segaloff, stating that the "mortgage is in process and [the plaintiffs] expect a written commitment late next week." Thereafter, the plaintiffs sent the defendant a third proposed amendment to the agreement, proposing to extend the commitment and closing dates to December 21, 2012, and January 11, 2013, respectively. The defendant did not sign the third proposed amendment to the

agreement.

On December 21, 2012, Tsui sent Segaloff a letter, which stated in relevant part: "Re: Notice to Terminate/ Rescind . . . . This is to provide notice to Sellers that as of this date, Buyers have not obtained a satisfactory unconditional written mortgage loan commitment or a clear to close. The Buyers have previously submitted an extension request to extend the mortgage contingency date to December 21, 2012, and no response or written acknowledgement was ever signed by Sellers. . . . Annexed hereto is another extension signed by Buyers, requesting that the [m]ortgage [c]ontingency date be extended through January 18, 2013, and the [c]losing [d]ate changed and extended through January 25, 2013. If acceptable, please instruct the Sellers to sign and return a fully executed copy to my attention. If unacceptable, this letter shall serve as notice that the contract shall be and is hereby rescinded and terminated." The defendant did not sign the fourth proposed amendment to the agreement.

On December 28, 2012, Segaloff informed Tsui and Ruchti that he believed the plaintiffs had breached the parties' agreement, entitling the defendant to retain the plaintiffs' deposits as damages. In January, 2013, the defendant re-listed the property and another buyer made a purchase offer. On February 17, 2013, the plaintiffs e-mailed Segaloff to provide an update about their loan applications. The plaintiffs also requested an update on the status of their request to terminate the contract and have their deposits returned. The plaintiffs further informed Segaloff that they were aware that the defendant had re-listed the property and contended that the defendant was not entitled to sell the home to another buyer, unless the defendant terminated the parties' agreement. The defendant ultimately sold the home to another buyer for $135,000 less than the purchase price set forth in the parties' agreement.

The plaintiffs initiated this action on February 27, 2014, alleging in relevant part that the defendant had breached the parties' agreement by "not timely releas-[ing] . . . the deposit[s] . . . ." The action was tried to the court on March 9, 2017. The court, *Wilson, J.*, found that, because only the plaintiffs signed the first, third, and fourth proposed amendments to the agreement and the plaintiffs did not assent to the defendant's handwritten additions with respect to the second proposed amendment, the parties never agreed to modify the original commitment and closing dates. It also found that the plaintiffs did not diligently pursue financing or provide proper notice that they intended to terminate the agreement prior to the commitment date. The court concluded that the plaintiffs had defaulted on the agreement by failing to close on the property, which entitled the defendant to retain the deposit funds pursuant to the liquidated damages provision set forth in the agreement.

The plaintiffs appealed and this court reversed the judgment of the trial court and remanded the case for a new trial. See *Li* v. *Yaggi*, supra, 185 Conn. App. 713. This court concluded that the trial court's finding as to whether the plaintiffs diligently pursued a mortgage commitment was clearly erroneous because the court relied exclusively on two loan denial notices that were issued by lenders *after* the commitment date had passed, which were ambiguous with respect to the plaintiffs' efforts to obtain financing *before* the commitment date had passed. Id., 704. Pertinent to this appeal, this court further held that the trial court improperly had interpreted the notice provision to require the plaintiffs to provide *notice of termination* rather than *notice of an inability to obtain a written commitment*. Id., 705. More specifically, this court concluded that "[t]he clear meaning of [the notice] provision is that if the plaintiffs were to give the defendant notice by the commitment date of their inability to obtain a written commitment by the commitment date, the agreement would be null and void and the plaintiffs would be entitled to the return of their deposits. The trial court instead [had] considered whether the plaintiffs complied with the terms of the agreement by providing the [defendant] with *notice of termination of the agreement . . . .*" (Emphasis in original; internal quotation marks omitted.) Id., 707. This court stated that, "[b]ecause the provision at issue does not require the buyer to include in the writing a notice of termination of the agreement, the court addressed the wrong question." Id. "Accordingly, the court should have determined whether the plaintiffs' November 24 e-mail, taken as a whole, contained sufficient language to notify the defendant of the plaintiffs' inability to obtain financing by the commitment date." Id., 708.

Following a new trial to the court on remand, the court, *Hon. Thomas J. Corradino*, judge trial referee, rendered judgment in favor of the defendant on all counts.[5] In a memorandum of decision dated January 23, 2020, the court found that, although the plaintiffs had proposed several extensions of the commitment and closing dates, no agreement to amend those dates had been reached by the parties.[6] Thus, the dates set forth in the parties' agreement were the controlling dates for the purpose of resolving the claims raised at trial. Regarding the question of whether the plaintiffs had provided to the defendant adequate and timely notice of their inability to obtain a mortgage commitment, the court concluded that the plaintiffs' November 24 e-mail proposing an extension of the commitment date did not satisfy the requirements of the agreement.[7] It found that the November 24 e-mail was ambiguous with respect to whether the plaintiffs would obtain a written commitment by the commitment date and that the plaintiffs' actions after the commitment date were inconsistent with their claim that the notice they had

provided to the defendant nullified the agreement. The court thus concluded that the plaintiffs were not entitled to recover their deposits. This appeal followed.

On appeal, the parties do not dispute that the plaintiffs were unable to obtain a written commitment by the commitment date. The parties disagree, however, about whether the plaintiffs satisfied the notice requirement in the agreement. The plaintiffs argue that the November 24 e-mail to the defendant properly notified the defendant that the plaintiffs were unable to secure a written mortgage commitment on or before the commitment date. The defendant counters that the November 24 e-mail was simply a request to extend the commitment and closing dates and that the e-mail was equivocal with respect to whether the plaintiffs would be able to obtain a written commitment by the commitment date. We agree with the defendant.

Before we reach the merits of the plaintiffs' claim, we set forth the relevant legal principles and standard of review. If the factual basis of a trial court's decision is challenged, the clearly erroneous standard of review applies. *Bartomeli* v. *Bartomeli*, 65 Conn. App. 408, 411–12, 783 A.2d 1050 (2001). "While conducting our review, we properly afford the court's findings a great deal of deference because it is in the unique [position] to view the evidence presented in a totality of circumstances . . . ." (Internal quotation marks omitted.) *Tulisano* v. *Schonberger*, 74 Conn. App. 101, 105, 810 A.2d 806 (2002). "A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case." (Internal quotation marks omitted.) *Blackwell* v. *Mahmood*, 120 Conn. App. 690, 694, 992 A.2d 1219 (2010).

"A mortgage contingency clause contained in a contract for the sale of real property generally allows the purchaser to recover his or her deposit if the purchaser is unable to secure a mortgage and has complied with the provisions of the contingency clause. See generally 77 Am. Jur. 2d, Vendor and Purchaser § 531 (2016) ('The purchaser may be expressly given the privilege or option to rescind the contract and to recover any payments made by him or her where the contract of sale provides for the cancellation of the contract in the event that the purchaser is unable to obtain a mortgage or loan within a specified time. . . . On the other hand, where the purchaser disregards the terms of a financing contingency contained in a contract for sale . . . the purchaser would not be entitled to invoke the contractual contingency and recover his or her down payment. . . .')." (Footnote omitted.) *Li* v. *Yaggi*, supra, 185

Conn. App. 699–700; see also *Semac Electric Co.* v. *Skanska USA Building, Inc.*, 195 Conn. App. 695, 715, 226 A.3d 1095 ("[a]lthough it is generally accepted that contracting parties may reserve the right to terminate a contract for convenience or cause upon a specified period of notice . . . [i]f a party who has a power of termination by notice fails to give the notice in the form and at the time required by the agreement, it is ineffective as a termination" (internal quotation marks omitted)), cert. denied, 335 Conn. 944, 238 A.3d 17 (2020), and cert. denied, 335 Conn. 945, 238 A.3d 19 (2020). A contingency clause, generally, "is meant to protect the buyer. It is a condition of the buyer's duty, not a condition of the seller's duty under the contract." (Footnote omitted.) 92 C.J.S. 178, Vendor and Purchaser § 197 (2010).

The contingency clause in the parties' agreement provided in relevant part: "If Buyer is unable to obtain a written commitment and notifies Seller in writing by 5:00 p.m. on said Commitment Date, this Agreement shall be null and void and any Deposits shall be immediately returned to Buyer." In *Li* v. *Yaggi*, supra, 185 Conn. 706–707, this court concluded that the plain language of this provision gave the plaintiffs the right to cancel the agreement by providing the requisite notice to the defendant. If the plaintiffs timely notified the defendant that they were unable to obtain a written commitment, the agreement would be rendered null and void and the plaintiffs were entitled to the return of their deposits. Id., 707. If the plaintiffs did not exercise their right to terminate the agreement by the commitment date, however, the contingency clause provided that "the [f]inancing [c]ontigency shall be deemed satisfied and this [a]greement shall continue in full force and effect." In that event, the plaintiffs were required to perform under the agreement and risked forfeiting their deposits by failing to do so. See generally *Southport Congregational Church—United Church of Christ* v. *Hadley*, 320 Conn. 103, 116–17, 128 A.3d 478 (2016).

Thus, the relevant inquiry at trial was whether the plaintiffs' November 24 e-mail adequately notified the defendant of the plaintiffs' inability to obtain financing by the commitment date. In reviewing whether the plaintiffs' purported notice satisfied the requirements set forth in the contingency clause, the court was required to look to the entirety of the communication sent to the defendant. See *Zullo* v. *Smith*, 179 Conn. 596, 605, 427 A.2d 409 (1980) (notice, "taken as a whole," contained sufficient language to notify seller that buyer was unable to obtain building permit). Furthermore, notice must be "sufficiently clear and unequivocal so as clearly to apprise the other party of the action being taken." Id., 604. On the basis of the record in this case, we conclude that the trial court properly determined that the November 24 e-mail sent to the defendant did not satisfy the notice requirement in the agreement's

contingency clause.

Viewing the plaintiffs' e-mail in its entirety, it was equivocal with respect to whether the plaintiffs would obtain a written mortgage commitment on or before the commitment date. Both the subject line ("Mortgage Commitment Extension Request") and the body of the e-mail ("Attached is a request of mortgage extension. . . . We request your approval of extension.") plainly indicate that the plaintiffs were seeking only to amend the commitment and closing dates, not to provide unequivocal notice that they were unable to obtain financing by the commitment date or to exercise their corresponding right of termination pursuant to the contingency clause. Although the plaintiffs' request for an extension may be understood to have implied that the plaintiffs were unlikely to obtain a written commitment by the commitment date, the plaintiffs' e-mail, taken as a whole, did not unequivocally communicate to the defendant that they would not obtain a written commitment on or before the November 26 commitment date. Rather, the plaintiffs explained that, due to a recent hurricane and the Thanksgiving holiday, they were unable to obtain a written commitment by 5 p.m. *on Saturday, November 24* and that they "expect a commitment from a bank *next week*." (Emphasis added.) Their notice of an expectation of receiving the commitment from a bank "next week" left open the possibility that they might receive a written commitment by the November 26 commitment date. The e-mail in response from Walz, the defendant's real estate agent, to Ruchti, the plaintiffs' real estate agent, indicating that the defendant was willing to amend the commitment and closing dates only if the plaintiffs provided proof of a mortgage commitment that was contingent solely on a bank appraisal, buttresses our conclusion. Walz' response to the plaintiffs' extension request clearly demonstrates that the defendant did not understand the plaintiffs' November 24 e-mail to evince an intent to terminate the parties' agreement in the event the defendant refused to sign the proposed extension.

Although the ambiguity of the plaintiffs' November 24 e-mail is, by itself, dispositive of the plaintiffs' claim, the record includes further evidence in support of the court's conclusion that the November 24 e-mail did not constitute notice sufficient to terminate the parties' agreement. If, as the plaintiffs contend, they understood the agreement to be null and void as a result of their November 24 e-mail, it would have made little sense for them to have sought subsequent amendments proposing to extend the commitment and closing dates on three separate occasions after the November 26 commitment date had passed.[8] Moreover, the plaintiffs' February 17, 2013 e-mail to Segaloff is wholly inconsistent with their claim that they had effectively nullified the agreement prior to the November 26 contingency date. In that e-mail, which was sent nearly three months after

the commitment date had passed, the plaintiffs claimed that the parties remained under contract and that the defendant therefore was not entitled to sell the home to another buyer, unless the defendant agreed to terminate the parties' agreement.

In light of the specific facts and circumstances of this case, we are not convinced that the court erred in finding that the plaintiffs' November 24 e-mail did not constitute sufficient notice to the defendant that the plaintiffs would not obtain a mortgage commitment by the commitment date. When the defendant declined to sign the proposed amendment attached to the plaintiffs' November 24 e-mail, the plaintiffs did not provide notice on or before the commitment date that they would not be able to obtain a written commitment by the commitment date or take any other subsequent actions consistent with a termination of the agreement and the right to a return of their deposits. As a result, the parties' agreement remained in effect and the defendant was entitled to retain the plaintiffs' deposits when the plaintiffs subsequently breached the agreement by failing to close on the property in accordance with the agreement. We therefore conclude that the trial court properly determined that the plaintiffs did not provide adequate notice to the defendant that they would not obtain a written commitment on or before the commitment date.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Henry K. Yaggi III, who was named as a defendant in the original complaint, died during the pendency of the first trial, and Valerie M. Yaggi, as the administrator of his estate, was substituted for Henry K. Yaggi III. Accordingly, in this opinion, we refer to Valerie M. Yaggi in both of her capacities as the defendant.

[2] The plaintiffs also alleged claims sounding in common-law breach of contract, a violation of the Connecticut Unfair Trade Practices Act (CUTPA), unjust enrichment, and fraud. The trial court found in favor of the defendant on all of these claims. With the exception of the unjust enrichment claim, the plaintiffs do not challenge the court's rulings on these separate claims.

The plaintiffs' challenge to the court's ruling with respect to their unjust enrichment claim warrants little discussion. It is well established that unjust enrichment is an "equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where *no express contract has been entered into by the parties*." (Emphasis added.) *Burns* v. *Koellmer*, 11 Conn. App. 375, 385, 527 A.2d 1210 (1987). It is uncontested that the parties in the present appeal executed a contract, the validity and enforceability of which has not been challenged by the parties. The plaintiffs also appear to assert an estoppel claim for the first time on appeal, which we decline to address. See *Guddo* v. *Guddo*, 185 Conn. App. 283, 286, 196 A.3d 1246 (2018) (our appellate courts generally will not review claims raised for first time on appeal).

[3] The agreement required the plaintiffs to exercise due diligence in pursuit of a commitment *and* to provide timely notice to the defendant of their inability to secure a commitment. Because we conclude that the trial court properly found that the plaintiffs failed to provide adequate notice, we need not determine whether the court properly determined that the plaintiffs failed to exercise due diligence in pursuit of a commitment or waived their right to the deposits.

[4] Under the agreement, the commitment date was the thirtieth day after the agreement was signed on October 26, 2012. Because the thirtieth day after the agreement was signed fell on November 25, which was a Sunday, the commitment date was the following day, Monday, November 26, 2012.

[5] Trial commenced on June 17, 2019, and continued on June 18 through

20, 2019, and July 1, 2019.

[6] The plaintiffs filed a motion for articulation on March 23, 2020, and the trial court granted that motion by way of its October 26, 2020 memorandum of decision.

[7] We note that the court's decision with respect to the notice issue is not entirely clear. However, we construe the court's judgment as finding that the plaintiffs' November 24 e-mail was ambiguous as to whether they were unable to obtain a mortgage commitment by the commitment date and that, consequently, it was inadequate notice under the terms of the agreement. See generally *Alpha Beta Capital Partners, L.P.* v. *Pursuit Investment Management, LLC*, 193 Conn. App. 381, 428, 219 A.3d 801 (2019) ("The interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.)), cert. denied, 334 Conn. 911, 221 A.3d 446 (2020), and cert. denied, 334 Conn. 911, 221 A.3d 446 (2020). Moreover, our interpretation of the court's decision is consistent with the parties' own interpretations, as evidenced by the issues raised and arguments made to this court.

[8] We also find instructive the striking contrast between the plaintiffs' November 24 e-mail to the defendant and Tsui's December 21 letter to Segaloff, which stated in no uncertain terms that the plaintiffs had "not obtained a satisfactory unconditional written mortgage loan commitment or a clear to close" and that if the defendant did not agree to execute the fourth request to amend the commitment and closing dates, the letter "shall serve as notice that the contract shall be and is hereby rescinded and terminated."