******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## FINOCCHIO BROTHERS, INC. *v.* 587 CTA, LLC
(AC 46392)

Alvord, Seeley and Bear, Js.

*Syllabus*

The plaintiff, a provider of refuse hauling and recycling services, sought to recover damages from the defendant, the owner of an apartment building, for, inter alia, breach of contract. The plaintiff claimed that the defendant failed to terminate the contract in accordance with the notice provision set forth therein and, therefore, that the contract had been renewed automatically for a two year period. The defendant claimed that it timely provided notice of its intention to terminate the contract. Following a court trial, the trial court rendered judgment for the defendant, from which the plaintiff appealed to this court. *Held* that the trial court's finding that the defendant properly cancelled the contract within the time frame required by the parties' contract was not clearly erroneous: the trial court expressly credited the testimony of D, the president of the parent company of the defendant, and found that his testimony should be accorded greater weight than other evidence introduced at trial; moreover, on the basis of D's testimony and statements he made in emails to the plaintiff, the court found that the defendant sent its cancellation notice to the plaintiff by certified mail as required and the plaintiff received this notice within the time frame to terminate the parties' contract, and it is well established that in a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony.

Argued February 6—officially released June 18, 2024

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, and tried to the court, *Golger, J.*; judgement for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Nicholas J. Adamucci*, for the appellant (plaintiff).

*Laura B. Indellicati*, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiff, Finocchio Brothers, Inc., appeals from the judgment of the trial court, rendered after a court trial, in favor of the defendant, 587 CTA, LLC. On appeal, the plaintiff claims that the court improperly found that the defendant had cancelled the parties' contract in accordance with the terms set forth therein. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, as set forth in the court's memorandum of decision, and procedural history are relevant to the resolution of this appeal. "[T]he plaintiff, [a provider of refuse hauling and recycling services] and the defendant, [the owner of an apartment building] executed a two year contract for refuse and recycling services on or about September 12, 2016, and . . . the contract was automatically renewable for two years thereafter. The contract further stated that, if the defendant desired to terminate its contract with the plaintiff and not exercise its renewal option, it would have to provide notice to the plaintiff by certified mail no less than ninety days prior to [and not more than 180 days before] the expiration of the two year term." The parties' contract renewed on September 12, 2018, for another two year period. The parties dispute whether the contract renewed again for the time period of September 12, 2020, to September 12, 2022, as the plaintiff claims, or whether the defendant timely provided notice of its intention to terminate the contract.

On May 17, 2021, the plaintiff commenced the present action. In its revised complaint dated September 15, 2021, the plaintiff alleged a breach of contract claim. Specifically, it contended that the defendant had failed to terminate the contract in accordance with the terms contained therein and, therefore, that the contract had been renewed automatically and remained in effect for

the time period of September 12, 2020, until September 12, 2022. The plaintiff further alleged that the defendant "unambiguously stated it will not perform its obligations under the service contract," and thereby breached the contract, causing the plaintiff to suffer damages. The plaintiff's revised complaint also set forth a claim of breach of the implied covenant of good faith and fair dealing, as well as three causes of action that the plaintiff described as negligent breach of contract, reckless breach of contract, and intentional breach of contract.

The court, *Golger, J.*, conducted a trial on January 11, 2023. The plaintiff presented two witnesses, Christopher Vigilante, an office manager employed by the plaintiff, and Thomas Finocchio, the president of the plaintiff. Both of the plaintiff's witnesses testified that they did not recall receiving a cancellation letter sent by certified mail from the defendant. The court summarized the evidence presented by the defendant as follows: "The defense presented testimony through Bryan Dietz, the president of EDG Properties, the parent company of the defendant. Dietz testified that he signed the original contract between the parties and agreed to the initial two year renewal of that contract. He further testified that he notified the plaintiff in May of 2020 that the defendant did not wish to renew its contract with the plaintiff for an additional two years. He testified that his decision to terminate was based on a desire to consolidate the waste removal needs of [the defendant's] properties with one company. Dietz testified that he sent the notice of his intention not to renew by certified mail but did not request a return receipt. He, however, did produce an email string demonstrating communications with the plaintiff concerning this issue subsequent to the initial notice having been allegedly sent and he testified that he received a phone call from

a representative of the plaintiff acknowledging receipt of his cancellation notice."

As the trier of fact, the court concluded that the testimony of Dietz "was credible notwithstanding the fact that he could not produce a receipt for the certified letter that he sent out. According to Dietz, he had various communications with representatives of the plaintiff after he sent his initial cancellation notice. Those communications were initiated by the plaintiff. The court finds that this testimony serves as confirmation of the plaintiff's receipt of the initial notice and that the notice was sent well within the time frame for proper cancellation of the contract between the parties." The court then noted that all of the plaintiff's causes of action were "premised on the proposition that the defendant did not properly cancel the contract at issue [and] having found to the contrary, [rendered] judgment in favor of the defendant on all counts." This appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiff claims that the court's finding that the defendant cancelled the parties' contract in accordance with the terms set forth therein, which required the defendant to give written notice of termination by certified mail within a certain time frame, was clearly erroneous. Specifically, it argues that the contract required actual delivery of the termination notice to the plaintiff, and there was insufficient evidence supporting the court's finding that the notice was actually received by the plaintiff. Additionally, the plaintiff contends that the evidence was insufficient to establish when the defendant sent the termination notice. We conclude that the court's findings regarding the timing and manner of the defendant's notice of termination of the parties' contract were not clearly erroneous and, therefore, the plaintiff's arguments are without merit.

As an initial matter, we identify the relevant legal principles and our standard of review. This court has

observed that, "[i]f a party who has a power of termination by notice fails to give the notice in the form and at the time required by the agreement, it is ineffective as a termination. . . . One who deviates from the terms and the circumstances specified in the agreement for giving notice . . . may be regarded as having repudiated the contract, with all the effects of repudiation including giving the injured party a right to damages . . . . [A] party's failure to comply with the notice provision in a termination clause . . . amounts to a material breach of the contract." (Citation omitted; internal quotation marks omitted.) *Semac Electric Co.* v. *Skanska USA Building, Inc.*, 195 Conn. App. 695, 715, 226 A.3d 1095, cert. denied, 335 Conn. 944, 238 A.3d 17 (2020), and cert. denied, 335 Conn. 945, 238 A.3d 19 (2020); see also *Li* v. *Yaggi*, 212 Conn. App. 722, 732, 276 A.3d 976, cert. denied, 345 Conn. 904, 282 A.3d 981 (2022). Whether a contract has been breached is a question of fact. *Centerplan Construction Co., LLC* v. *Hartford*, 343 Conn. 368, 419, 274 A.3d 51 (2022); *Semac Electric Co.* v. *Skanska USA Building, Inc.*, supra, 705.

Additionally, we note that, "[i]n a case tried before the court, the trial judge is the sole arbiter of the credibility of witnesses and the weight to be afforded to specific testimony. . . . [When] the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . In other words, to the extent that the trial court has made findings of fact, our review is limited to deciding whether those findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction

that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Downing* v. *Dragone*, 216 Conn. App. 306, 316, 285 A.3d 59 (2022), cert. denied, 346 Conn. 903, 287 A.3d 601 (2023); *Parrott* v. *Colon*, 213 Conn. App. 375, 387, 277 A.3d 821 (2022); see also *Kohl's Dept. Stores, Inc.* v. *Rocky Hill*, 219 Conn. App. 464, 485, 295 A.3d 470 (2023).

In the present case, the defendant presented testimony from Dietz, the president of the parent company of the defendant. Dietz explained that he wanted to terminate the parties' contract to consolidate the refuse and recycling service for the defendant's property with another provider. Dietz recalled that he was aware of the limited time frame for cancellation, and he therefore reviewed the termination language of the parties' contract several times. He also referenced his intention to avoid the financial consequences of breaching the contract that would result from the failure to comply with the contract's terms regarding cancellation.

Dietz further testified that he sent the cancellation letter, dated May 13, 2020, via certified mail from the Darien post office.[1] He could not recall the exact date that he had mailed it, but he did testify on redirect examination that he sent it in May, 2020, which was within the time frame for cancellation of the parties' contract. Dietz then stated that he received a phone call from a representative of the plaintiff one or two weeks after he sent the termination letter. This representative acknowledged the receipt of the letter and

---

[1] Dietz specifically testified: "I recall going to the Darien post office [where] I handle my correspondence through and I was kicking myself that I did not bring a copy to staple the receipt to, the little yellow or green slip." Dietz then explained that he made efforts to locate the receipt for the certified letter, but was not able to locate it, either in his office or in the defendant's archives.

inquired about the defendant's "dissatisfaction and how they could correct it."[2] Dietz informed the plaintiff's representative that the only reason for ending the contract was the defendant's intention to consolidate its refuse and recycling services.

Dietz subsequently spoke with a representative of the plaintiff in either June or July of 2020 regarding the removal of the plaintiff's containers from the defendant's property. In an effort to facilitate the removal of these containers, Dietz ceased payment to the plaintiff.[3] In September of 2020, he sent a letter to the plaintiff, stating that it was the defendant's "second attempt" to terminate the contract. Dietz also indicated that he emailed the plaintiff on September 22, 2020, in which he referenced his prior communications with the plaintiff.[4] In his subsequent email on September 24, 2020, Dietz declared: "As I wrote before, *someone reached out to me from* [*the plaintiff*] *after my first notice in May, but never followed up*." (Emphasis added.)

The trial court expressly credited Dietz' testimony and found that it "*should be accorded greater weight*

---

[2] Dietz testified as follows: "So, I remember receiving the call because I was working with a contractor on my house. The call came in saying that they were from [the plaintiff] and that they received the letter and they wanted to know . . . what was my dissatisfaction and how they could correct it. And I said that it was simply that I wanted to consolidate but— and I had no other reason. And they said that someone else would be calling me."

[3] Dietz subsequently testified that he "withheld payment for the last two to three invoices so that [he] would get some attention" from the plaintiff and that he eventually paid the invoices in October, 2020.

[4] This email stated: "I am writing to you because I have tried more than once to terminate my contract with [the plaintiff] and have not gotten any response. Attached is a second notice [a letter dated September 12, 2020, requesting information on coordinating the last date of service and collection of the plaintiff's containers] that was recently mailed. I had hoped that there would be a professional response on [the plaintiff's] side, *but I haven't heard from anyone other than an initial call from someone who promised a follow up call, which never happened*." (Emphasis added.)

*than other evidence introduced in this proceeding.*"
(Emphasis added.) We emphasize that "[i]t is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . As trier of fact, the court was free to accept or reject, in whole or in part, the testimony offered by either party." (Citation omitted; internal quotation marks omitted.) *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 135, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014); see also *Companions & Homemakers, Inc.* v. *A&B Homecare Solutions, LLC*, 348 Conn. 132, 148, 302 A.3d 283 (2023); *Hebrand* v. *Hebrand*, 216 Conn. App. 210, 223, 284 A.3d 702 (2022). Additionally, this court will make every reasonable presumption in favor of the trial court's factual findings and does not examine the record to determine whether it could have reached a different conclusion. See *Clark* v. *Quantitative Strategies Group, LLC*, 224 Conn. App. 224, 236 n.11, 311 A.3d 732 (2024); see also *Commissioner of Transportation* v. *ACP, LLC*, 221 Conn. App. 708, 722, 302 A.3d 936 (2023). On the basis of Dietz' testimony and the statements he made in his emails to the plaintiff, the court found that the defendant sent its cancellation notice to the plaintiff by certified mail and the plaintiff received this notice within the time frame to terminate the parties' contract. We conclude, therefore, that the court's finding that the defendant properly cancelled the contract within the time frame required by the parties' contract was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.